**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 7/10/96**

**TENTH CIRCUIT**

---

CLOVIS CARL GREEN, JR.,

     Petitioner,

v.

HONORABLE EDWARD W. NOTTINGHAM, District Judge; HONORABLE RICHARD M. BORCHERS, Magistrate Judge,

     Respondents.

No. 96-511

---

**ORDER**

---

Before **BALDOCK, KELLY**, and **LUCERO**, Circuit Judges.

---

**LUCERO,** Circuit Judge.

---

Clovis Carl Green, a prisoner in the Colorado correctional system, petitions for a writ of mandamus under 28 U.S.C. § 1651(a). Fed. R. App. P. 21(a). Mr. Green, a well-known "frequent filer" in federal courts, seeks a writ requiring the district court to resolve

promptly his habeas corpus petition, filed on April 2, 1996.[1]  In addition, he wants the

district court to adopt new rules and procedures to expedite its habeas review process.

Mr. Green also petitions this court to allow him to proceed with the mandamus

petition without prepayment of fees, and has submitted a declaration describing his assets

and earnings.  28 U.S.C. § 1915.  Mr. Green's petitions were filed on May 7, after the

President signed into law the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134,

110 Stat. 1321 (Apr. 26, 1996), which significantly amends 28 U.S.C. § 1915, the in

forma pauperis ("IFP") statute.  The IFP statute now reads, in relevant part:

> (a)(2) A prisoner seeking to bring a civil action or appeal a judgment in a
> civil action or proceeding without prepayment of fees or security therefor,
> in addition to filing the affidavit filed under paragraph (1), shall submit a
> certified copy of the trust fund account statement (or institutional
> equivalent) for the prisoner for the 6-month period immediately preceding
> the filing of the complaint or notice of appeal obtained from the appropriate
> official of each prison at which the prisoner is or was confined. . . .

> (b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action
> or files an appeal in forma pauperis, the prisoner shall be required to pay the
> full amount of the filing fee.  The court shall assess and, when funds exist,
> collect, as partial payment of any court fees required by law, an initial
> partial filing fee of 20 percent of the greater of--(A) the average monthly
> deposits to the prisoner's account; or (B) the average monthly balance in the
> prisoner's account for the 6-month period immediately preceding the filing
> of the complaint or notice of appeal.
> (2) After payment of the initial partial filing fee, the prisoner shall be
> required to make monthly payments of 20 percent of the preceding month's

---

[1]  Subsequent to this filing, the district court did grant a portion of what Mr. Green asks of us by way of mandamus; it issued a show cause order to the Colorado Attorney General to respond to the habeas petition.  Green v. Price, 96-CV-534 (D. Colo. May 31, 1996) (order to show cause).

income credited to the prisoner's account.  The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

. . . .

(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee. . . .

. . . .

(g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915.

We must decide, in light of the amended statute, if Mr. Green may proceed IFP.  If the statute applies to mandamus proceedings such as the one brought here, it is clear that Mr. Green has not complied with the application requirements of the IFP statute because he has not submitted a certified copy of his prison trust fund account statement (or institutional equivalent) for the past six month period.  28 U.S.C. § 1915(a)(2).  On that basis alone, we would be unable to grant his IFP application.

## I

The amendments to § 1915 added by the Prison Litigation Reform Act include restrictions and procedures on prisoners attempting to "bring a civil action or appeal a judgment in a civil action or proceeding."  See Pub. L. No. 104-134, §§ 804(a)(1)(F), (3),

(d); § 1915(a)(2), (a)(3), (g) (as amended). The Act does not define "civil action" for purposes of the IFP statute, and does not expressly include or exclude mandamus proceedings within its operation. "Civil action" is a term used in many statutes, and its meaning depends on its context within the applicable legislation. See, e.g., 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000 . . . and is between [diverse parties]"); 28 U.S.C. § 2412(a)(1) (costs "may be awarded to the prevailing party in any civil action brought by or against the United States . . ."); see also Fed. R. Evid. 1101(b) (the Federal Rules of Evidence "apply generally to civil actions and proceedings . . ."). It is at the margins that one encounters difficulty in determining whether a particular proceeding is a "civil action." Compare, e.g., Sullivan v. Hudson, 490 U.S. 877, 891-93 (1989) (administrative proceedings, while not generally considered "civil actions," treated as such within meaning of fee-shifting provision of Equal Access to Justice Act ("EAJA") when the district court retains jurisdiction pending completion of the administrative proceedings) with Ewing v. Rodgers, 826 F.2d 967 (10th Cir. 1987) (habeas corpus proceedings, while traditionally considered "civil actions," not treated as such for purposes of EAJA). "The application of each statute or rule using the words 'civil action' must be decided on the basis of its language, its history and its purpose." Payden v. United States (In re Grand Jury Subpoena Duces Tecum), 775 F.2d 499, 503 (2d Cir. 1985)(Friendly, J.).

Mandamus proceedings have been considered outside of district court jurisdiction over "civil actions," granted in 28 U.S.C. §§ 1331, 1332. See Sleeth v. Dairy Prods. Co., 228 F.2d 165, 169 (4th Cir. 1955), cert. denied, 351 U.S. 966 (1956). This point has little relevance in these circumstances, however. As the Supreme Court noted:

> "The general words used in the clause . . . taken by themselves, and literally construed, without regard to the object in view, would seem to sanction the claim of the plaintiff. But this mode of expounding a statute has never been adopted by any enlightened tribunal--because it is evident that in many cases it would defeat the object which the Legislature intended to accomplish. And it is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law. . . ."

Stafford v. Briggs, 444 U.S. 527, 535 (1980) (construing the term "civil action" as used in the Mandamus and Venue Act of 1962, 28 U.S.C. 1391(e), to include only mandamus actions) (quoting Brown v. Duchesne, 60 U.S. (19 How.) 183, 194, 15 L. Ed. 595 (1857)).

The clear import of the Prison Litigation Reform Act, as reflected in its title, is to curtail meritless prisoner litigation. See H.R. Rep. No. 104-378, 104th Cong., 1st Sess. 166 (the prison litigation reforms are intended to "discourage frivolous and abusive prison lawsuits"). A mandamus proceeding under section 1651, although characterized as an original proceeding, is not an independent grant of jurisdiction, but an aid of appellate jurisdiction. 16 Charles A. Wright et al., Federal Practice and Procedure, § 3932 (1977) (quotation omitted). As such, mandamus is part of the litigation of a case. The IFP amendments specifically target litigation by prisoners. Allowing prisoners to continue

filing actions as they had before enactment of the amendments, merely by framing pleadings as petitions for mandamus would allow a loophole Congress surely did not intend in its stated goal of "discourag[ing] frivolous and abusive prison lawsuits." The term "lawsuit" is commonly used to include "any of various technical legal proceedings." Webster's Third New Int'l Dictionary (Unabridged) 1280 (1993). In this context, a mandamus proceeding is no more than a lawsuit against the district court to compel it to act. Based on the history and purpose of the Prison Litigation Reform Act, we conclude that petitions for a writ of mandamus are included within the meaning of the term "civil action" as used in § 1915. We also conclude that the use of the word "complaint" in the amended § 1915(a)(2), when viewed in this light, is broad enough to include petitions for extraordinary writs, including mandamus.[2]

If Mr. Green had merely failed to comply with the application requirements of the amended IFP statute, we would dismiss the mandamus petition without prejudice and allow him to refile a proper IFP application. In addition to filing an incomplete

---

[2] We also note that the Supreme Court has traditionally sanctioned abusive litigants by forbidding them from filing further petitions for mandamus and other extraordinary writs in forma pauperis. See In re Anderson, 114 S. Ct. 1606 (1994) (forbidding abusive pro se litigant from bringing further extraordinary writs without prepayment of fees, but allowing him to continue to file in forma pauperis for other forms of relief); In re Sindram, 111 S. Ct. 596 (1991) (same); In re McDonald, 109 S. Ct. 993 (1989) (same). To the extent that subsection (g) of amended § 1915 acts to curtail prisoners from filing "civil actions" in forma pauperis because of past abuses, treating mandamus actions and other extraordinary writs as "civil actions" is particularly appropriate.

application under § 1915(a)(2), however, Mr. Green faces a more serious barrier to proceeding IFP:  § 1915(g).

**II**

Section 1915(g) generally prevents a prisoner from proceeding in forma pauperis in civil actions if three or more of his prior suits have been dismissed as frivolous or malicious, or for failure to state a claim.  As of 1981, Mr. Green had filed between 600 and 700 complaints in state and federal courts, many of which had been dismissed as malicious or frivolous.  See In re Green, 669 F.2d 779, 781 (D.C. Cir. 1981) (detailing the history of Mr. Green, "in all likelihood the most prolific prisoner litigant in recorded history").  We take judicial notice that Mr. Green has had three actions or appeals in courts of the United States dismissed as frivolous or malicious.  See St. Louis Baptist Temple, Inc. v. F.D.I.C., 605 F.2d 1169, 1172 (10th Cir. 1979) (federal courts may take notice of judicial proceedings in other courts if they have a direct relation to matters at issue).  There is thus no question but that Mr. Green has had actions dismissed as frivolous or malicious "on 3 or more prior occasions, while incarcerated or detained in any facility."  We must decide whether § 1915(g) precludes Mr. Green from proceeding in forma pauperis in this action.  Mr. Green cannot proceed in forma pauperis if § 1915(g) applies to suits dismissed prior to its enactment.

To determine the temporal scope of new legislation, we consider first "whether Congress has expressly prescribed the statute's proper reach." Landgraf v. USI Film Prods., 114 S. Ct. 1483, 1505 (1994). If Congress has not expressly prescribed the statute's proper reach, we resort to judicial default rules. In Landgraf, the Supreme Court identified two "seemingly contradictory" judicial default rules. "The first is the rule that 'a court is to apply the law in effect at the time it renders its decision.'" Id. at 1496 (quoting Bradley v. Richmond Sch. Bd., 416 U.S. 696, 711 (1974)). And "[t]he second is the axiom that 'retroactivity is not favored in the law,' and its interpretive corollary that 'congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.'" Id. (quoting Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988)).

Reconciling these rules, Landgraf "set forth a method to determine the applicability of newly enacted legislation on a pending suit." Lennox v. Evans, No. 96-6041, 1996 WL 343632, at *1 (10th Cir. June 24, 1996). If Congress has not expressly prescribed the statute's proper reach, "the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf, 114 S. Ct. at 1505. If the new statute would have a retroactive effect, it will not be applied retroactively "absent clear congressional intent favoring such a result." Id.

Guided by <u>Landgraf</u>, we examine first whether Congress has expressly prescribed the proper reach of § 1915(g).  Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

A textual analysis of this section suggests that Congress intended § 1915(g) to apply to prisoner actions dismissed prior to its enactment.  Congress chose broad language, targeting any actions dismissed on "prior occasions."  From a plain reading of this language it would be difficult to conclude that Congress intended to allow prisoners who repeatedly filed frivolous or malicious actions before the enactment of § 1915(g) to continue filing in forma pauperis after the enactment of § 1915(g) until three additional actions have been so dismissed.

Although § 1915(g)'s language seems to refer to all prior civil actions dismissed for the reasons listed in the subsection, it nevertheless lacks "the kind of unambiguous directive" that the Supreme Court required in <u>Landgraf</u>, clearly showing that Congress intended § 1915(g) to apply to suits dismissed prior to its enactment.  <u>See</u> <u>Landgraf</u>, 114 S. Ct. at 1494, 1496 (only language such as "the new provisions 'shall apply to all proceedings pending on or commenced after the date of enactment of this Act,'" is sufficiently clear and explicit to require retroactive application)(quoting S.2104, 101st

- 9 -

Cong., 1st Sess. §15(a)(4)(1990)); see also id. at 1499 (citing United States v. Heth, 3 Cranch 399 (1806), where Court searched statute for "clear, strong, and imperative language requiring retroactive application." (quotation omitted)); id. at 1500 (citing Chew Heong v. United States, 112 U.S. 536, 559 (1884), denying retrospective operation, "unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the legislature."(quotation omitted).  Likewise, the legislative history does not include clear and unequivocal statements indicating that Congress intended courts to consider a prisoner's pre-enactment suits when barring future in forma pauperis actions.

Because Congress has not unambiguously prescribed the scope of § 1915(g), we consider next whether the provision in fact has a retroactive effect.  This requires us to examine "whether the new provision attaches new legal consequences to events completed before its enactment."  Landgraf, 114 S. Ct. at 1499.  A new statute has retroactive effect if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  Id. at 1505.  "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law."  Id. at 1499 (citation omitted).  Furthermore, "a statute 'is not made retroactive merely because it draws upon antecedent facts for its operation.'"  Id. at 1499 n.24 (quoting Cox v. Hart, 260 U.S. 427, 435 (1922)).

The Supreme Court has recognized that new statutes altering procedural rules "may often be applied in suits arising before their enactment without raising concerns about retroactivity." Id. at 1502. "Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." Id.

In our view, § 1915(g) announces a procedural rule governing in forma pauperis filings by prisoners. Section 1915(g) does not change the merits of the prisoner's underlying action; it only affects the prisoner's ability to file the action in forma pauperis. The provision does not change the legal consequences of prisoner actions dismissed before the statute's enactment. Instead, it imposes stricter requirements for proceeding in forma pauperis in future actions on those prisoners who have shown a propensity toward filing meritless lawsuits in the past. Application of § 1915(g) to prisoner suits dismissed prior to the statute's enactment thus does not raise concerns of statutory retroactivity because the provision does not have a "retroactive effect." Because the plain language of § 1915(g) strongly suggests that Congress intended courts to consider prisoner suits dismissed prior to the statute's enactment, and applying this procedural rule in such a manner would not have a retroactive effect, we conclude that § 1915(g) requires us to consider prisoner suits dismissed prior to the statute's enactment. We hold that § 1915(g) prevents Mr. Green from proceeding in forma pauperis in this proceeding.

**CONCLUSION**

We DENY petitioner leave to proceed in forma pauperis under 28 U.S.C. § 1915. He may resubmit his petition by paying the filing fee, in accordance with 10th Cir. R. 21.1. For the reasons explained above, we also direct the Clerk of this Court not to accept from Mr. Green any further extraordinary writs in noncriminal matters, or appeals of judgments in civil actions or proceedings, unless he pays the filing fees established by our rules. The preceding directive does not apply to appeals or petitions claiming that Mr. Green is under imminent danger of serious physical injury.

No. 96-511, Green v. Nottingham.

Kelly, Circuit Judge, concurring in part and dissenting in part.

As amended, 28 U.S.C. § 1915(a)(1) provides:

Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1), as amended by, Pub. L. No. 104-134, 110 Stat. 1321, § 804(a) (April 26, 1996). The issue we must address is whether the further restrictions concerning prisoners who "bring a civil action or a appeal a judgment in a civil action or proceeding," § 1915(a)(2) & (g), or a prisoner who "brings a civil action or files an appeal in forma pauperis," § 1915(b)(1), or prisoners "bringing a civil action or appealing a civil . . . judgment," § 1915(b)(4), apply to prisoners who file petitions for a writ of mandamus. These further restrictions are found in sections following the general rule contained in § 1915(a)(1).

Section 1915(a)(1) plainly allows a court of appeals to waive fees associated with a petition for writ of mandamus because such is the "commencement or prosecution" of a "suit, action or proceeding" that is "civil." The subsequent use of "bringing a civil action" in the remaining sections of § 1915 is merely an abbreviation, rather than an effort to limit the balance of the statute to original proceedings in the district court and appeals in the court of appeals. Moreover, given that a petition for writ of mandamus

under 28 U.S.C. § 1651(a) and Fed. R. App. P. 21(a) generally is antecedent to an appeal and in aid of our appellate jurisidiction, see FTC v. Dean Foods Co., 384 U.S. 597, 603-04 (1966); Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 25 (1943), such a petition is probably within the scope of an "appeal therein," i.e. an appeal of civil judgment, as used in the statute. Given the extraordinary nature of mandamus relief and the frequency with which it is unsuccessfully requested by prisoners, this interpretation is faithful to the purpose of the statute. I thus concur with the court that Mr. Green is required to comply with the current in forma pauperis requirements because a petition for writ of mandamus comes within the reach of the amended statute. Therefore, I would dismiss this petition without prejudice.

I dissent from that part of the court's disposition which goes further and resolves the matter under § 1915(g). I see no need to reach the issue at this point. Only if Mr. Green elects to refile his petition (without paying the filing fee) in compliance with the other provisions of § 1915, should the court, with the benefit of an adversarial presentation, consider the important constitutional, legal and factual issues inherent in barring Mr. Green from filing in forma pauperis via § 1915(g). With all due respect to the court, without having heard from Mr. Green (or anyone else) on this issue, I simply do not think that we have enough to go on.