**Everett R. LYON, Plaintiff,**

v.

**Del VANDE KROL; Paul Hedgepeth; James Helling; Rabbi Jacobson; Chavbad Lubavitch of Iowa, Defendants.**

**Civil No. 4–96–cv–10356.**

United States District Court, S.D. Iowa, Central Division.

Sept. 9, 1996.

Philip P. Mears, Patrick E. Ingram, Mears Law Office, Iowa City, IA, for plaintiff.

William A. Hill, Assistant Attorney General of Iowa, Des Moines, IA, for defendants.

Frank W. Hunger, Assistant Attorney General, Christopher D. Hagen, Assistant U.S. Attorney, Des Moines, IA, Vincent M. Garvey, Deputy Director, Kathryn D. Ray, Trial Attorney, U.S. Department of Justice, Washington, DC, for Intervenor.

## ORDER

LONGSTAFF, District Judge.

The court has before it for consideration plaintiff's motion to alter or amend judgment. The court certified to the United

States Attorney General that plaintiff had drawn into question the constitutionality of the Prison Litigation Reform Act and granted time within which the United States could intervene. Defendants have resisted plaintiff's motion, and the United States has elected to intervene and has filed its brief. The motion is submitted.

### Background

On April 26, 1996, the president signed into law the Prison Litigation Reform Act (PLRA), Pub.L. No. 104–134, § 801 *et seq.*, 110 Stat. 1321 (1996). Section 804(d) of the PLRA created a new subsection, 28 U.S.C. § 1915(g):

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

(Emphasis added.) The underlined phrase "under this section" refers to § 1915, the statute authorizing proceedings in forma pauperis (IFP). Therefore, § 1915(g) applies only to inmates who seek to qualify for IFP status to file their civil action or appeal.

On May 8, 1996, plaintiff Everett Lyon, an inmate of the Iowa State Penitentiary, attempted to bring an action pro se under 42 U.S.C. § 1983 claiming that he had recently been denied participation in Jewish services and other practices of the Jewish faith. Because Lyon had previously filed at least three civil actions that were dismissed as frivolous, and his complaint did not meet the "imminent danger of serious physical injury" standard, the court dismissed his complaint pursuant to the three-dismissal rule of 28 U.S.C. § 1915(g). The three actions previously dismissed as frivolous were dismissed prior to the enactment of the PLRA. Other inmates who filed similar claims prior to enactment of the PLRA were granted preliminary injunctive relief. *See Shelton v. Halford,* Civ. No. 4–96–cv–80336, Ruling on Plaintiff's Motion for Preliminary Injunction (May 22, 1996).

Because of the special issues raised by this case, the court appointed an attorney to represent plaintiff. Plaintiff then filed a motion to alter or amend the court's judgment, challenging the constitutionality of § 1915(g).

### Retroactivity

Plaintiff contends § 1915(g) has an impermissible retroactive effect based on the nature and extent of the changes under the PLRA, and based on considerations of fair notice, reasonable reliance, and settled expectations. Plaintiff argues he had no notice that his earlier dismissals would affect his later ability to proceed IFP, the PLRA failed to protect his reasonable reliance and expectation based on years of prison litigation that he would be able to file future actions IFP, and the change in the law substantially affected his ability to seek redress in the courts.

To determine the applicability of the new federal statute, the court first must decide whether Congress "expressly prescribed the statute's proper reach." *Landgraf v. USI Film Prods.,* 511 U.S. 244, ——, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). If Congress did so in the statute, that clearly expressed statement governs. If the statute is unclear, the court must determine whether the statute operates retroactively, that is, "whether it [ ] impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." *Id.* If it does, the traditional presumption is against retroactive application of the law "absent clear congressional intent favoring such a result." *Id.*

This court agrees with the analysis in *Green v. Nottingham,* 90 F.3d 415, 419 (10th Cir.1996), that although the language of § 1915(g) suggests Congress meant for § 1915(g) to apply to dismissals that occurred before the Act, neither the language of § 1915(g) nor other provisions in the Act expressly dictate the reach of § 1915(g). The court therefore must consider whether § 1915(g) operates retroactively.

As the Court explained in *Landgraf,*

A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

*Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1499 (citations and footnote omitted). Guiding the court in this process are the "considerations of fair notice, reasonable reliance, and settled expectations." *Id.*

In *Green,* the Tenth Circuit considered the *Landgraf* decision in determining the applicability of § 1915(g) to dismissals that occurred before the enactment of the PLRA. It held that § 1915(g) is a procedural rule that "imposes stricter requirements for proceeding in forma pauperis in future actions on those prisoners who have shown a propensity toward filing meritless lawsuits in the past." *Green,* 90 F.3d at 420. The court held § 1915(g) does not alter the merits of a prisoner's action or the legal consequences of the previously dismissed actions. *Id.* Based on the plain language of § 1915(g) and its procedural nature, the court concluded § 1915(g) required it "to consider prisoner suits dismissed prior to the statute's enactment." *Id.*

This court finds the Tenth Circuit's analysis in *Green* persuasive. In addition, § 1915(g) does not impair any rights a prisoner had before the law's enactment because IFP status under the former version of the law was available at a judge's discretion. *See Treff v. Galetka,* 74 F.3d 191, 197 (10th Cir. 1996) (IFP status is a privilege, not a right). Finally, § 1915(g) does not require a prisoner to perform "new duties with respect to

transactions already completed." *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1505. For all these reasons, the court concludes § 1915(g) does not operate retroactively simply because dismissals entered before the enactment of the PLRA are considered in applying § 1915(g).

### Statutory Interpretation

Plaintiff also argues that because the application of the three-dismissal rule raises significant due process concerns, and Congress did not expressly make the provision applicable to pending cases, this court should decline to give the statute that interpretation. The court, however, did not apply the PLRA to a pending case. Plaintiff's case was filed after the date of enactment.

### Equal Protection

■ Plaintiff argues that § 1915(g) violates the equal protection guarantee of the Fifth Amendment.[1] Although the Fifth Amendment contains no Equal Protection Clause, "the Fifth Amendment's Due Process Clause prohibits the Federal Government from engaging in discrimination that is 'so unjustifiable as to be violative of due process.'" *Schlesinger v. Ballard,* 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 574 n. 3, 42 L.Ed.2d 610 (1975) (quoting *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954)).

The three-dismissal provision in § 1915(g) expressly applies to the class of inmates who have had three or more civil actions or appeals dismissed as frivolous and who seek to proceed IFP on claims not involving the imminent danger of serious physical injury. This section of the PLRA treats this class of indigent inmates differently from the similarly situated class of prisoners with three frivolous dismissals who do *not* seek to proceed IFP.

Under equal protection analysis, "if a law neither burdens a fundamental right nor targets a suspect class, [the court] will uphold the legislative classification so long as it

---

1. Although plaintiff also alludes to an "arguable" substantive due process claim in footnote 7 of his brief, plaintiff states he believes "that the proper mode of analysis lies in equal protection." Defendants did not brief substantive due process; the United States extensively briefed the issue. Because plaintiff seems to have chosen to proceed under equal protection principles, the court will not separately consider a substantive due process claim.

bears a rational relation to some legitimate end." *Romer v. Evans*, — U.S. —, —, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996).

**Fundamental Right.** Plaintiff argues that the PLRA directly and substantially burdens inmates' "fundamental constitutional right of access to the courts." *See Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). The Court in *Bounds* described the right of access to the courts as "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 825, 97 S.Ct. at 1496; *see also Lewis v. Casey*, — U.S. —, —, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996). The Supreme Court emphasized that habeas petitions and civil rights actions are fundamentally important because they directly protect our most valued rights. *See Bounds*, 430 U.S. at 827, 97 S.Ct. at 1497–98; *see also Schrier v. Halford*, 60 F.3d 1309, 1311 (8th Cir.1995). The Eighth Circuit has recognized that prisoners' right of access to the courts may stem from both the First Amendment right to petition and the due process and equal protection rights under the Fifth and Fourteenth Amendments. *See Berdella v. Delo*, 972 F.2d 204, 210 n. 9 (8th Cir.1992). Section 1915(g) does burden the ability of the affected class of inmates to file in federal court constitutional claims other than those involving imminent serious physical injury.

Defendants and Intervenor United States assert that the PLRA does not substantially burden an inmate's access to the courts for several reasons. First, they argue that the three-dismissal provision does not deny access to the courts to *all* inmates, only those inmates seeking IFP status who have three previous frivolous dismissals and who are not at risk of imminent serious physical injury. They also note that the provision does not deny access to the courts in criminal cases or habeas proceedings. However, the fact that § 1915(g) does not burden the right of access to the courts for all inmates on all claims

simply narrows the class affected; it is not dispositive of plaintiff's constitutional challenge. In his complaint in this particular case, plaintiff alleged an important constitutional claim—the denial of his right to the free exercise of religion under the First Amendment. This is just one example of the important constitutional claims that this class of indigent inmates, under § 1915(g), would be prohibited from or substantially burdened in bringing.

Second, they contend that inmates with three dismissals can still file actions, they just have to pay the fee like other litigants. They assert that there is no reason to believe that all prisoners cannot afford the fee, and § 1915(g) only means that inmates will have to pay the filing fee up front instead of in installments. *See* 28 U.S.C. § 1915(b) (requiring inmates who proceed IFP to pay an initial partial filing fee and the remainder of the fee in monthly payments). Having to pay the whole filing fee at once, $120 for civil actions or $105 for appeals, is a substantial burden to those who would otherwise qualify for IFP—they either cannot file the action at all if they do not have sufficient money, or if they can file the action, their account of some amount above the filing fee is substantially depleted.[2]

Third, they point out that federal courts do not have a monopoly on resolution of prisoner grievances concerning conditions of confinement. The United States notes that inmates can use the prisoner grievance system. Indeed, the PLRA requires inmates to exhaust their prison conditions claims in the grievance system prior to bringing them in court. *See* PLRA § 803, amending 42 U.S.C. § 1997e(a). The prison grievance system, however, is not a substitute for the courts in resolving constitutional claims. Although inmates can also bring § 1983 claims in state court, plaintiffs have an important interest in access to federal courts for vindication of their federal constitutional rights. *See, e.g.,*

---

**2.** The United States makes much of the fact that plaintiff stated on his IFP form signed on May 6, 1996, that he makes $67.20 in prison wages per month, has $138.40 in his prisoner account, and has $64.52 in a savings account. Normally, under these facts, however, plaintiff would qualify

for IFP status in this court. The court concludes that the fact that plaintiff, as of May 6, could have paid the full filing fee is not dispositive of whether § 1915(g) substantially burdens his right of access to the courts.

*Haring v. Prosise,* 462 U.S. 306, 322–23, 103 S.Ct. 2368, 2377–78, 76 L.Ed.2d 595 (1983).

Finally, defendants and the United States argue that inmates do not have an unconditional right to proceed IFP and the three-dismissal rule provision is similar to the federal courts' inherent power to limit inmates' abuse of the courts. The difference between § 1915(g) and the power of federal courts to limit abusive litigation is that a federal court limits abuse in response to the actions of an individual litigant based on particular circumstances. The three-dismissal rule does not take into account the length of incarceration, different periods of incarceration, the number of meritorious actions filed by the inmate, and other pertinent information that might guide a federal court in properly limiting abuse of the court system. In any case, what a federal court may do in one particular case is not dispositive of whether legislation burdening access to the courts for a class of inmates violates the equal protection component of the Fifth Amendment.

The court concludes that requiring this class of inmates, who would otherwise qualify for IFP status, to prepay the full filing fee places a substantial restriction on these inmates' ability to bring a new civil action and constitutes a substantial burden on their fundamental right of access to the courts. The court, therefore, need not address plaintiff's alternative argument for heightened scrutiny that prisoners constitute a suspect class.

■ ***Strict Scrutiny.*** Normally, a court reviews statutes impinging on a fundamental constitutional right under a strict scrutiny standard. *See Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982). Although plaintiff discusses the more deferential standards of review under *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), the court finds that these cases are not applicable in this situation. Those cases all involved challenges to prison regulations affecting constitutional rights and determined the appropriate deference to be given to state prison authorities in prison adminis-

tration and security matters. This case, on the other hand, involves a challenge to a federal statute affecting prisoner litigation in federal courts and addressing other related federal court administration and legal issues. Because this case raises none of the concerns present in the above cases about second-guessing prison officials' judgments concerning prison administration and security, the court concludes the usual strict scrutiny rule for fundamental rights should apply. Under strict scrutiny review, § 1915(g) must be found "necessary" to the attainment of a "compelling government interest" in order to survive an equal protection challenge. *See Plyler,* 457 U.S. at 216–17, 102 S.Ct. at 2394–95.

The apparent government interest in passing the PLRA, and this provision in particular, was to discourage the number of frivolous lawsuits filed by inmates in federal courts. In the Senate debate on the PLRA, supporting senators stated that prisoner litigation constitutes a large percentage of the federal civil docket, wastes judicial resources, and affects the quality of justice enjoyed by non-inmate citizens. *See, e.g.,* 141 Cong.Rec. S14,626–28 (daily ed. Sept. 29, 1995) (statements of Sen. Dole, Sen. Hatch, and Sen. Reid).

Even assuming the interest in deterring inmates from filing frivolous lawsuits is compelling, § 1915(g) would stop only *indigent* inmates with three previous frivolous dismissals from filing new civil actions. Those inmates who also have filed three or more frivolous actions in the past, but have enough money to pay filing fees, can file as many new lawsuits as they can afford. Under § 1915(b), even indigent inmates have to pay the full fee eventually anyway, which serves as a financial incentive for inmates to file only actions they believe are meritorious. Stopping *all* further lawsuits under § 1915(g), frivolous or not, by indigent inmates with three dismissals unless imminent serious physical injury is involved would bar many other important and arguably meritorious constitutional claims by only those inmates. *Cf. Rinaldi v. Yeager,* 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966) (holding that state statute which re-

quired reimbursement of cost of criminal appeal transcript only by incarcerated persons violated the equal protection clause; the statute would burden many appeals that were not frivolous and allow many that were, so it did not serve the purpose of deterring frivolous appeals).[3]

For all of these reasons, the court concludes that the indigency classification in 28 U.S.C. § 1915(g) is not necessary or narrowly tailored to achieve a compelling government interest, and therefore is unconstitutional under the equal protection component of the Fifth Amendment.

### Rulings

Plaintiff's motion to alter or amend judgment is **granted.** The order and judgment dismissing Civil No. 4–96–cv–10356 shall be vacated.

Plaintiff shall complete and return, within 30 days of this order, the attached Forms B and C, and upon their receipt the court will rule on his request to proceed IFP and assess the initial filing fee if appropriate. Service of process shall be stayed until further order of the court.

### § 1292(b) Certification

Pursuant to 28 U.S.C. § 1292(b), I certify that I am of the opinion that the foregoing ruling on the constitutionality of 28 U.S.C. § 1915(g) involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the adjudication may materially advance the ultimate termination of the litigation.

IT IS SO ORDERED.

---

**3.** The Supreme Court has struck down state laws requiring filing fees or other costs to appeal a state conviction or to file a habeas petition in state court, concluding among other things that there was no rational basis for assuming that indigents' motions and petitions would be less meritorious than those of other defendants. *See* *Smith v. Bennett,* 365 U.S. 708, 710, 714, 81 S.Ct. 895, 896, 6 L.Ed.2d 39 (1961) (state habeas filing fee); *Burns v. Ohio,* 360 U.S. 252, 257–58, 79 S.Ct. 1164, 1168–69, 3 L.Ed.2d 1209 (1959) (filing fee for appeal to state supreme court); *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (cost of transcript).