**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 19 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID S. DAHLER,

      Plaintiff-Appellant,

v.

FRANK GOODMAN, Education
Technician, USP Leavenworth;
D. ROBERTS, Sr. Case Manager, USP
Leavenworth; PAGE TRUE, Warden,
USP Leavenworth; PATRICK R.
KANE, Regional Director, Federal
Bureau of Prisons, Kansas City,
Kansas; KATHY HAWK, Director,
Federal Bureau of Prisons,
Washington, D.C.,

      Defendants-Appellees.

No. 97-3177
(D.C. No. 96-3343 GTV)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **EBEL** and **MURPHY**, Circuit Judges.

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This pro se appeal by a prisoner at the United States Penitentiary in Leavenworth, Kansas, challenges the decision by prison officials not to provide the prisoner with access to annotated sets of state statutes from Michigan and Wisconsin. Because the court relied on erroneous factual findings and failed to consider applicable legal standards when it dismissed the plaintiff's suit, we must reverse and remand.

I.

David Dahler, plaintiff-appellant, filed this civil rights suit against federal officials at the Leavenworth penitentiary on July 9, 1996, alleging a cause of action under Bivens v. Six Unknown Named Federal Narcotics Agents, 403 U.S. 388 (1971), for a violation of Dahler's constitutional right of access to the courts.[1] (See R., Doc. #2, "Civil Rights Complaint with a Jury Demand," at 3-4.) Because Dahler's suit was filed after the effective date of the Prisoner Litigation Reform Act (PLRA), it was processed under that act's filing procedures for in forma pauperis suits by prisoners. See 28 U.S.C.A. § 1915 (West 1997 Supp.);

---

[1]Dahler also alleged a cause of action under 42 U.S.C. § 1983, but this claim is clearly without merit because section 1983 applies only to government conduct "under color of state law," rather than under color of federal law. See Wheeldin v. Wheeler, 373 U.S. 647, 650 n.2 (1963). Dahler has not alleged that the federal officials in this case acted under anything other than federal law, and as a result, section 1983 does not apply to his suit.

see also Green v. Nottingham, 90 F.3d 415, 418-19 (10th Cir. 1997) (finding that the PLRA's filing fee provisions are procedural rules whose requirements do not have a prohibited "retroactive effect").

Dahler's suit arose out of a written request he filed with prison officials on January 2, 1996, asking to be provided access with a complete annotated set of the Michigan and Wisconsin state statutes, as well as the rules of criminal and civil procedure for those states. (See R., Doc. #2, Ex. 1.) Dahler explained in his request that he needed these statute books to assist him in his effort to challenge certain state convictions in those states because those convictions had been used to enhance his federal sentence. (See id.) The prison denied Dahler's request, contending that it was not required to provide prisoners access to state-law materials. (See R., Doc. #2, Ex. 2.) The prison also explained that Dahler could meet his alleged need for Wisconsin and Michigan legal materials by contacting the University of Kansas School of Law clinical program for prisoners, which is under contract to the prison to provide legal assistance to prisoners. (See id.)

Dahler found this decision unsatisfactory, and he filed an internal grievance with the warden at the Leavenworth penitentiary. (See R., Doc. #2, Ex. 5.) The warden denied Dahler's grievance, again citing Dahler's access to the clinical program at the University of Kansas School of Law. (See R., Doc. #2, Ex. 6.) Dahler pursued his grievance to the next administrative level, but again his

request was denied, along with a reference again to the clinical program at the University of Kansas.  (See R., Doc. #2, Exs. 7 & 8.)  Dahler took his grievance to the National Inmate Appeals office, alleging for the first time in this filing that the clinical program at the University of Kansas would not help him: "[A]s far as the Government's contract with the University of Kansas Law School, I've submitted [a] request for assistance to them and never received an answer[,] plus they don't deal in Wisconsin and Michigan law, the area I need the material in." (R., Doc. #2, Ex. 9.)  On May 31, 1996, the administrator of the National Inmate Appeals office issued a final denial of Dahler's grievance.  (See R., Doc. #2, Ex. 10.)  The denial once again cited the clinical program at the University of Kansas, but the inmate appeals office failed to address Dahler's point that the clinical program either was unable or unwilling to assist him.  (See id.)  This final decision also found that Dahler's request for a complete set of statute books was unreasonably overbroad, and that Dahler should have made a more limited specific request.  (See id.)

Within forty days of this final administrative decision, Dahler filed his civil rights suit in federal district court seeking injunctive and declaratory relief, as well as compensatory and punitive damages.  (See R., Doc. #2, at 8.)  After granting permission for Dahler to proceed in forma pauperis under 28 U.S.C.A. § 1915( b) (West Supp. 1997), the district court dismissed Dahler's complaint for

failure to state a claim.[2]  (See R., Doc. #11, "Order," at 3.)  The district court found that Dahler's request for complete sets of statute books from Michigan and Wisconsin was "too broad to sufficiently describe the materials he sought."  (See id.)  The district court also found that "the record does not suggest plaintiff made any effort to contact the source of legal assistance supplied by defendants."  (See id.)  As result, the district court concluded that Dahler's constitutional right of access to the courts had not been denied.  Dahler now appeals.

II.

As a preliminary matter, we note that there is some uncertainty in this circuit as to what standard of review we should apply to a district court's dismissal of an in forma pauperis action when the basis of the dismissal is for failure to state a claim.  The most recent reported opinion of this court held that the standard of review for a dismissal under section 1915(e)(2) was for abuse of discretion.  See McWilliams v. Colorado, 121 F.3d 573, 574-75 (10th Cir. 1997).  The McWilliams decision, however, arose in the context of a dismissal for

---

[2]The district court entered its judgment of dismissal sua sponte, before any of the defendants in the case had been formally served with legal process.  This fact suggests,  even though the district court failed to explicitly indicate so, that the court's dismissal was entered under 28 U.S.C.A. 1915(e)(2)(B)(ii) (West Supp. 1997), which requires a district court to dismiss an in forma pauperis action when it appears that the action fails to state a claim on which relief may be granted.

frivolousness under section 1915(e)(2)(B)(I). See id. at 574. In subsequent unreported decisions, we have suggested that the more rigorous de novo standard of review could apply to dismissals under section 1915(e)(2)(B)(ii), where the basis of the dismissal is not for frivolity but for failure to state a claim on which relief may be granted. See Carter v. Hobbs Police Dep't, No. 97-2045, 1998 WL 31437, at *1 n.2 (10th Cir. Jan. 28, 1998) (unreported order & judgment) (concluding that the court need not resolve the difficult question of which standard of review should apply to a dismissal under section 1915(e)(2)(B)(ii) because the district court's decision appeared to be focused solely on the frivolousness of the plaintiff's complaint); Forisso v. Johnson, No. 97-2228, 1998 WL 3284, at *1 (10th Cir. Jan. 7, 1998) (unreported order & judgment) (ruling that the de novo standard of review should apply when the district court failed to make clear whether it was dismissing the prisoner's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim or under section 1915(e)(2)). Despite the lack of any clear precedent on this issue, we believe we need not settle this question because our resolution of Dahler's appeal meets either standard of review.

III.

Under our case law, a prisoner has a constitutional right of access to the courts to challenge the validity of his sentence, and part of this constitutional right is a requirement that prison officials assist inmates in filing nonfrivolous legal claims either by "providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." See Lewis v. Casey, 116 S. Ct. 2174, 2177 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 828 (1977)); see also Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (per curiam) (applying Lewis and Bounds to a claim of inadequate access to a prison law library). As Lewis made clear, a prisoner may bring a claim alleging an infringement of his constitutional right of access to the courts based on alleged inadequacies in his prison's legal assistance program if, and only if, the prisoner can demonstrate that these inadequacies have caused him "actual injury." See Lewis, 116 S. Ct. at 2179-80. This allegation of an actual injury must be sufficient to "demonstrate that the alleged shortcomings in the library or legal assistance program hindered [the prisoner's] efforts to pursue a legal claim." Id. at 2180 (emphasis added); see also Penrod, 94 F.3d at 1403 ("[A]n inmate must satisfy the standing requirement of 'actual injury' by showing that the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim.")

(emphasis added).[3]  Furthermore, the only injuries that are cognizable under Lewis are inadequacies that have "hindered" a prisoner's abilities to "attack [his] sentence[], directly or collaterally, and . . . to challenge the conditions of [his] confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis, 116 S. Ct. at 2182 (emphasis in original).

In Dahler's case, he has alleged that the failure of the Leavenworth penitentiary to provide him access to Michigan and Wisconsin statutory materials has hindered his ability to attack collaterally his federal sentence because his sentence was based in part on state convictions in Michigan and Wisconsin.  (See

---

[3]In an unpublished opinion last year, we noted that the Supreme Court's decision in Lewis effectively overruled prior Tenth Circuit precedent which had allowed a prisoner's access-to-court claim go forward even without a showing of actual injury to any of the prisoner's pending or contemplated litigation efforts.  See Tucker v. Graves, No. 96-3015, 1997 WL 100884, at *1 n.2 (10th Cir. Mar. 6, 1997) (unpublished order & judgment) (holding that "Ruark v. Solano, 928 F.2d 947 (10th Cir. 1991) . . . is effectively overruled on this point" by Lewis).  Since Tucker, we have not revisited the question of just how specifically a plaintiff must plead his allegation of actual injury in an access-to-courts claim, but we think it is clear that the actual injury requirement of Lewis and Penrod means only that a plaintiff must allege in his initial complaint that his prison's denial of access to legal materials has "hindered" his litigation efforts.  See Lewis, 116 S. Ct. at 2180; Penrod, 94 F.3d at 1403.  Compare Treff v. Galetka, 74 F.3d 191, 194 (10th Cir. 1996) (holding -- in a decision prior to either Lewis or Penrod -- that a prisoner must allege that the prison's denial of legal materials has "prejudiced" him in pursuing litigation).  The requirements in Penrod and Treff are not inconsistent because Penrod equated hindrance of a nonfrivolous claim to actual injury, i.e., as a form of the prejudice required in Treff.

- 8 -

R., Doc. #2, at 4.)  This allegation would be sufficient, if proven, to establish the kind of actual injury required in Lewis and Penrod.  See Lewis, 116 S. Ct. at 2182; Penrod, 94 F.3d at 1403; see also Petrick v. Maynard, 11 F.3d 991, 993 (10th Cir. 1993) (finding an Oklahoma prisoner's allegation of a denial of access to the courts to be sufficient based on his claim that prison officials had refused to provide him with North Dakota and Minnesota state-law materials that were needed to challenge the state convictions that had been used to enhance the prisoner's Oklahoma sentence).

Despite the sufficiency of Dahler's allegation of actual injury, the district court dismissed Dahler's complaint for failure to state a claim on which relief could be granted.  (See R., Doc. #12, "Judgment in a Civil Case.")  The district court concluded that dismissal was required in light of the court's factual finding that Dahler had failed to take advantage of the legal assistance provided to Leavenworth inmates through the University of Kansas School of Law clinical program.[4]  (See R., Doc. #11, at 3.)  The factual premise of the court's ruling here, however, is belied by the evidence presented in the plaintiff's own

---

[4]The text of the district court's ruling is as follows:
> Because the record does not suggest plaintiff made any effort to contact the source of legal assistance supplied by defendants, the court finds plaintiff's claim defendants denied him access to the courts fails to state a claim for relief.

(R., Doc. #11, at 3.)

complaint. Dahler's complaint incorporated by explicit references the entire history of the administrative grievances he had pursued in the prison system, including his grievance to the National Inmate Appeals office in which Dahler indicated that he had sought assistance from the clinical program at the University of Kansas School of Law, and the program had been unable to help him. (See R., Doc. 2, Ex. 9.) This allegation[5] indicates that Dahler had indeed "made an[] effort to contact the legal assistance supplied by the defendants," contrary to the finding of the district court.

In the course of reaching its decision, the district court also found that Dahler's request for Michigan and Wisconsin legal materials was "too broad to sufficiently describe the materials he sought." (See R., Doc. #11, at 3 (citing Petrick, 11 F.3d at 995).) Again, we disagree.

In Petrick, we concluded that a prisoner's specific request for certain cases and secondary legal material was sufficiently specific to allow a court to balance the prisoner's need for the material with the prison's legitimate penological

_____

[5]In his civil suit, Dahler alleged that as of March 8, 1996, he had not received any response from the Kansas Defender Project at the University of Kansas School of Law. (See R., Doc. #2, Ex. 9.) However, in his Appendix in this appeal, Dahler has attached copies of two letters he received after he filed his civil suit. (See Aplt. App., Ex. F.) Although these letters were not before the district court when it dismissed Dahler's suit -- and therefore, we may not consider them now in this appeal -- the district court may wish to review this evidence on remand.

- 10 -

interests in denying access to the material.  <u>Petrick</u>, 11 F.3d at 993 n.2 & 996 (reversing the district court's dismissal of the prisoner's claims).  However, we also concluded that the prisoner's additional "catch-all" request for a "controlling case on accepting guilty pleas within the State of North Dakota" was excessively broad.  <u>See id.</u>  We held that the central issue in determining whether a request is sufficiently specific is whether prison officials may fulfill the request without having to do independent legal research of their own.  <u>See id.</u> ("[T]he materials sought should be described sufficiently so that the prison can obtain them for the prisoner without being required to perform legal research for the prisoner.").

In Dahler's case, he has made a specific request for annotated sets of statutes from Michigan and Wisconsin.[6]  This request is sufficiently specific to allow prison officials to identify the legal materials Dahler wants without conducting any legal research of their own.  <u>See Petrick</u>, 11 F.3d at 996.  To this extent, the district court erred in finding that Dahler's request was "too broad to sufficiently describe" the material he wanted.  (<u>See</u> R., Doc. #11, at 3.)

_____

[6]Dahler's first request in his letter to prison officials asked for "(1) A complete set of Wisconsin State Statute and annotations with Criminal and Civil State Law procedures.  (2) A complete set of Michigan State statute and annotations dealing with criminal law and procedure."  (<u>See</u> R., Doc. #2, Ex. 1.) The record does not show any modification or narrowing of this request during the course of Dahler's administrative grievances.

However, this is not the end of the inquiry.  Once a court determines that a request for legal materials is sufficiently specific, then the court must determine whether the request is excessive, i.e., whether the prison's current legal services are adequate.  In Petrick, we held that this determination is controlled by a case-by-case balancing test.  Id. at 996.  On one side of the balance is the prisoner's asserted need for the requested legal materials.  See id.  On the other side is the prison's penological interest in denying access to the requested legal materials.  See id.  Furthermore, only penological interests that are "legitimate" and "reasonably related" to the prison's policies may be considered.  Id. at 994-95.  As we noted in Petrick, although the cost of providing legal materials to prisoners is a legitimate penological concern, "the cost of protecting a constitutional right cannot justify its total denial."  Id. at 995 (quoting Bounds, 430 U.S. at 825).  Also, after identifying the legitimate penological interests justifying the prison's policy, the district court must "consider reasonable alternative methods of accommodating these potentially conflicting interests."  Id. at 996.

To the extent that the district court's ruling reflected its view that Dahler's request was excessive as a matter of law, the court erred by vaulting over the careful balancing required under Petrick.[7]  See Petrick, 11 F.3d at 996.  The

_____

[7]There may be cases where a prisoner's request is so clearly overbroad that as a matter of law it must be considered excessive.  However, here the district

(continued...)

district court reached its conclusion that Dahler's request was excessive without identifying what legitimate penological interests the defendants could rely upon or what alternative measures might be appropriate. Indeed, the defendants in this case were never served and never filed an answer in which they could present their position on the excessiveness of Dahler's request. Thus, a balancing of the plaintiff's interests against the government's would be premature at this stage of the case, and the court's conclusion that Dahler's request was excessive as a matter of law was an abuse of discretion.

Because the record before us indicates that the district court relied on clearly erroneous factual findings and failed to apply appropriate legal standards, we must REVERSE and REMAND this case for further consideration.

The mandate shall issue forthwith.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

---

[7](...continued)
court should have required the Government to address its penological interests before engaging in the required balancing test. In doing so, and in considering "reasonable alternative methods of accommodating these potentially conflicting interests," the district court should have given Dahler an opportunity to narrow his request in response to the Government's arguments of overbreadth.