United States Court of Appeals,

Eleventh Circuit.

No. 97-2868.

Vincent F. RIVERA, Plaintiff-Appellant,

v.

Catherine B. ALLIN, Health Services Administrator;  Teresa K. Dowling, Health Information Specialist, et al., Defendants-Appellees.

June 23, 1998.

Appeal from the United States District Court for the Middle District of Florida. (No. 97-735-CV-J-20C), Harvey E. Schlesinger, Judge.

Before HATCHETT, Chief Judge, and RONEY and LAY[*], Senior Circuit Judges.

HATCHETT, Chief Judge:

In this appeal, we uphold as constitutional the "three strikes" *in forma pauperis* provision of 28 U.S.C.A. § 1915(g) (West Supp.1998), section 804(d) of the Prison Litigation Reform Act of 1995 (PLRA), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104-134, 110 Stat. 1321, 1374-75 (April 26, 1996).

I. BACKGROUND

On May 9, 1997, appellant Vincent Rivera, a Florida prisoner, filed a civil rights complaint under 42 U.S.C. § 1983 in the United States District Court for the Northern District of Florida. Proceeding without counsel, Rivera alleged that a prison doctor "disregard[ed]" his medical needs and "fondle[d]" his genitals during a physical examination.  Rivera sought punitive damages, correction of records and restoration of "gain time" lost due to disciplinary action.

---

[*]Honorable Donald P. Lay, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

Contemporaneously with his complaint, Rivera sought leave to proceed *in forma pauperis* (IFP), that is, without prepaying the entire $150 filing fee, and attached an affidavit of indigency and a certified copy of his prison account statement. A magistrate judge issued a report and recommendation that the district court transfer Rivera's case to the Middle District of Florida, which encompassed Rivera's place of incarceration. Rivera objected to the recommendation, contending that the Middle District had previously "refused to provide [him] with due process of law" in two prior cases, *Rivera v. Singletary,* 96-1307-CIV-J-99C, and *Rivera v. Perrin,* 96-650-CIV-J-20B. A district judge of the Northern District, however, adopted the magistrate judge's recommendation and transferred the case.

On June 23, 1997, before service of process on the defendants, a district judge of the Middle District denied Rivera's pending application to proceed IFP. The court took judicial notice of three of Rivera's prior prison-generated lawsuits that judges of the Middle District had dismissed as frivolous, malicious or failing to state a claim upon which relief may be granted: (1) *Rivera v. Tornin,* 93-170-CIV-ORL-22; (2) *Rivera v. Arocho,* 96-275-CIV-J-99S; and (3) *Rivera v. Parker,* 96-325-CIV-J-10. Because of these three "prior occasions" and Rivera not being in "imminent danger of serious physical injury[,]" the court concluded that 28 U.S.C. § 1915(g) rendered Rivera ineligible for IFP status. The court dismissed Rivera's case without prejudice, advising that he "may initiate a new civil rights action by filing a new civil rights complaint form and the full $150.00 filing fee."

Following the dismissal of his case, Rivera filed a notice of appeal and an updated affidavit of indigency in the district court. Finding that Rivera did not appeal in good faith, the district court ordered him to prepay the entire $105 appellate filing fee. Rather than requiring him to prepay the

entire fee, however, the clerk of this court obtained Rivera's written consent to deduct from his prison account an initial partial payment, and subsequent monthly installment payments, to satisfy the appellate filing fee.

On February 12, 1998, this court *sua sponte* appointed the Federal Public Defenders for the Middle and Southern Districts of Florida to represent Rivera on appeal. The United States intervened pursuant to 28 U.S.C. § 2403(a), and the State of Florida accepted our invitation to participate as *amicus curiae.* Expediting the appeal, the court directed Rivera, the United States and Florida to address the constitutionality of section 1915(g) "in addition to other issues which they wish to raise."[1]

## II. DISCUSSION

Leave to proceed IFP is, and always has been, the exception rather than the rule. To commence a civil lawsuit in federal district court, the general rule is that initiating parties must prepay a filing fee. *See* 28 U.S.C.A. § 1914(a) (West Supp.1998). Similarly, to appeal a judgment of the district court, appellants ordinarily prepay a filing fee. *See* 28 U.S.C.A. § 1913 & note (schedule of fees).[2] Prior to the enaction of the PLRA, however, federal courts could waive the filing fee requirement for any indigent, regardless of prisoner status:

> Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security thereof, by a person who makes affidavit that he is unable to pay such costs or give security thereof.

---

[1]On March 19, 1998, Rivera and the United States participated in oral argument in Miami, Florida.

[2]The same is generally true of the Supreme Court, which "may fix the fees to be charged by its clerk." 28 U.S.C. § 1911 (1994).

28 U.S.C. § 1915(a) (1994).

On April 26, 1996, this law changed when the President signed into law the PLRA. *See Adepegba v. Hammons,* 103 F.3d 383, 385 (5th Cir.1996) ("[T]he PLRA became effective on the day it was signed into law."). Under the PLRA, federal courts may continue to except non-prisoner indigents from prepaying filing fees. *See* 28 U.S.C.A. §§ 1915(a)(1) (West Supp.1998). Courts may not, however, continue to except prisoner indigents from prepaying filing fees.[3] Instead, prisoner indigents must prepay at least a partial filing fee:

> [I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee ... [followed by] monthly payments....

28 U.S.C.A. § 1915(b)(1)-(2) (partial and installment payment formulas omitted). A limited exception exists only for prisoners who have "no assets and no means by which to pay the initial partial filing fee." 28 U.S.C.A. § 1915(b)(4).[4] In *Mitchell v. Farcass,* this court recently rejected a prisoner's equal protection challenge to the PLRA's filing fee provisions' disparate treatment of prisoner indigents vis-a-vis non-prisoner indigents, concluding that "Congress had ample justification (*e.g.,* prisoners often have an abundance of free time, live in a nearly cost-free environment, and have unique incentives to file meritless or frivolous lawsuits) in differentiating between" them. 112 F.3d 1483, 1489 (11th Cir.1997).

---

[3]The PLRA, including section 1915(g), applies only to civil cases and does not, for example, apply to habeas corpus proceedings. *See Anderson v. Singletary*, 111 F.3d 801, 805 (11th Cir.1997).

[4]However, "the prisoner is still obligated to pay the full filing fee when the money does become available." *McGore v. Wrigglesworth*, 114 F.3d 601, 606 (6th Cir.1997).

At issue today is the PLRA's treatment of "frequent filer" prisoner indigents (that is, prisoners who have had at least three prior prison-generated lawsuits or appeals dismissed as frivolous, malicious or failing to state a claim upon which relief may be granted) vis-a-vis other prisoner indigents:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C.A. § 1915(g). This provision of the PLRA, "commonly known as the "three strikes' provision," requires frequent filer prisoners to prepay the entire filing fee before federal courts may consider their lawsuits and appeals. *Lyon v. Krol,* 127 F.3d 763, 764 (8th Cir.1997). The only exception to section 1915(g) is if the frequent filer prisoner is "under imminent danger of serious physical injury." 28 U.S.C.A. § 1915(g).

Raising issues of first impression in this circuit, Rivera challenges the constitutionality of section 1915(g) on four grounds: (1) the First Amendment right to access the courts; (2) the separation of judicial and legislative powers; (3) the Fifth Amendment right to due process of law; and (4) the Fourteenth Amendment right to equal protection, as incorporated through the Fifth Amendment. Alternatively, Rivera raises retroactivity concerns, contending that the district court erred in counting as strikes lawsuits dismissed prior to April 26, 1996, the date the PLRA became effective. Finally, Rivera asserts that two of his prior cases, *Rivera v. Arocho,* 96-275-CIV-J-99(S), and *Rivera v. Parker,* 96-325-CIV-J-10, were not proper "strikes" that is, they were not dismissed as frivolous, malicious or failing to state a claim upon which relief may be granted.

5

Rivera's constitutionality and retroactivity arguments "present legal questions that we address in a plenary fashion." *Mitchell,* 112 F.3d at 1487. Similarly, we review the district court's determination of qualifying strikes *de novo. See McGore v. Wrigglesworth,* 114 F.3d 601, 604 (6th Cir.1997); *Adepegba,* 103 F.3d at 387.

A.

The United States Constitution provides that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend I. Rivera focuses on one aspect of the First Amendment, "the right of access to the courts[.]" *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 2169, 76 L.Ed.2d 277 (1983). Specifically, Rivera argues that section 1915(g)'s purpose and effect is to prevent him and other frequent filer prisoner indigents from filing civil lawsuits—even meritorious ones—since they cannot afford to prepay the entire filing fee.

We disagree. "[T]he right of access to federal courts is not a free-floating right, but rather is subject to Congress's Article III power to set limits on federal legislation." *Roller v. Gunn,* 107 F.3d 227, 231 (4th Cir.), *cert. denied,* --- U.S. ----, 118 S.Ct. 192, 139 L.Ed.2d 130 (1997).[5] Although it had the power to do so, Congress did not repeal any particular cause-of-action available to prisoners. Rather, "[s]ection 1915(g) does not prevent a prisoner with three strikes from filing

---

[5]In *Roller,* the Fourth Circuit rejected the prisoner's contention that the filing fee and cost provisions of the PLRA (28 U.S.C. § 1915(b)(1), (b)(2) and (b)(4)) violated "his constitutional right of access to the courts," finding them to be only "mild" barriers to the courthouse. 107 F.3d at 231, 233. *But cf. Church v. Attorney Gen. of Va.,* 125 F.3d 210, 212 (4th Cir.1997) ("Although the increased up-front cost imposed by [section 1915(b) ] may deter prisoners from pursuing claims that they may otherwise have pursued-one of the arguments for enacting the PLRA-their right of access to the courts has nevertheless been diminished[.]"). The *Roller* prisoner, however, did not challenge the "three strikes" provision.

civil actions; it merely prohibits him from enjoying IFP status." *Carson v. Johnson,* 112 F.3d 818, 821 (5th Cir.1997); *see also Lyon,* 127 F.3d at 765 ("Section 1915(g) does not prohibit prisoners from pursuing legal claims if they have had "three strikes' or three prior dismissals. It only limits their ability to proceed [IFP].").[6] Through the PLRA, Congress changed only the rules regarding IFP status. To be sure, proceeding IFP in a civil case is a privilege, not a right—fundamental or otherwise. *See Adepegba,* 103 F.3d at 386. As such, imposition of a modest filing fee on prisoners with "three strikes" is reasonable because "Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them." *Roller,* 107 F.3d at 231.

A review of Rivera's underlying lawsuit does not change our conclusion. The Supreme Court has mandated waivers of filing fees in civil cases only where "the litigant has a "fundamental interest at stake.' " *Carson,* 112 F.3d at 821 (quoting *M.L.B. v. S.L.J.,* 519 U.S. 102, ----, 117 S.Ct. 555, 562, 136 L.Ed.2d 473 (1996)). The Fifth Circuit, collecting cases, outlined the boundaries: "Examples of proceedings that implicate fundamental interests are divorce actions ... and terminations of parental rights.... Examples of interests that do not rise to this level are bankruptcy filings ... and welfare benefit determinations...." *Carson,* 112 F.3d at 821 (citations omitted). Rivera's well-pled allegations (that the prison doctor disregarded his medical needs and fondled his genitals during an exam) plainly advance no cognizable fundamental interest. *See Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency'

---

[6]In *Carson,* the Fifth Circuit rejected the prisoner's contention that "the "three strikes' provision of the PLRA is unconstitutional because it blocks access to the courts[.]" 112 F.3d at 821.

in violation of the Eighth Amendment."). Unlike the parent in *M.L.B. v. S.L.J.* and the married couple in *Boddie v. Connecticut,* Rivera faces no "state controls or intrusions on family relationships." *Roller,* 107 F.3d at 232 n. 1 (quoting *M.L.B.,* 519 U.S. at ---- - ----, 117 S.Ct. at 563-64; citing *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). And, unlike Rivera, neither the *M.L.B.* parent nor the *Boddie* couple had a history of abusing the judicial system.[7]

Moreover, the PLRA does not render frequent filer prisoners who cannot prepay the entire filing fee without means to reach the courthouse's doors to prevent grave bodily harm. In drafting the exception to section 1915(g), Congress inherently recognized prisoners' fundamental interest to be free of unwarranted "imminent danger of serious physical injury." 28 U.S.C.A. § 1915(g).[8] Rivera, however, is in no such danger. In fact, he concedes that the doctor stopped fondling him immediately upon request.

Accordingly, we find no violation of the First Amendment right to access the courts. Rivera's and other frequent filer prisoners' access to the courts remains "adequate, effective, and meaningful" even though section 1915(g) serves to disqualify them from prepaying partial, as opposed to entire, federal court filing fees during their term of incarceration. *Bounds v. Smith,* 430

---

[7]This circuit has upheld pre-filing screening restrictions on litigious plaintiffs, reasoning that the plaintiffs were not "completely foreclosed from *any* access to the court." *Martin-Trigona v. Shaw,* 986 F.2d 1384, 1387 (11th Cir.1993) (collecting cases).

[8]*See generally Gibbs v. Roman,* 116 F.3d 83, 86-87 (3d Cir.1997) (vacating district court's application of section 1915(g) and remanding for a determination of whether the prisoner "was in imminent danger of bodily harm ... when the alleged incidents occurred" based on the prisoner's well-pled allegations).

U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); *see also Hampton v. Hobbs,* 106 F.3d 1281, 1284 (6th Cir.1997).[9]

B.

"It is the intention of the Constitution that each of the great co-ordinate departments of the government—the legislative, the executive, and the judicial—shall be, in its sphere, independent of the others." *United States v. Klein,* 80 U.S. (13 Wall.) 128, 147, 20 L.Ed. 519 (1871).  Although it is Congress's job to enact laws, "[i]t is emphatically the province and duty of the judicial department to say what the law is[ ]" and apply it to the facts at hand.  *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).  Rivera contends that Congress's enaction of section 1915(g) infringes upon the federal courts' ability to adjudicate independently frequent filer prisoners' "fourth through nth cases[.]" *Duvall v. Miller,* 122 F.3d 489, 490 (7th Cir.1997).  Specifically, Rivera argues that section 1915(g) prevents courts from deciding these cases on their merits and, at most, allows courts to perform only the rote task of counting "strikes."[10]

---

[9]In *Hampton,* the Sixth Circuit held that "the fee provisions of the [PLRA] do not deprive prisoners of their right of access to the courts."  106 F.3d at 1286.  Like the *Roller* prisoner, the *Hampton* prisoner did not challenge section 1915(g).  Recently, however, the Sixth Circuit held that " § 1915(g) does not infringe upon the fundamental right of access to the courts." *Wilson v. Yaklich,* --- F.3d ----, ----, Nos. 96-3023, 96-4323, slip op. at 13 (6th Cir. June 8, 1998).

> We note, but place no reliance upon, the Sixth Circuit's reasoning that section 1915(g) does not prevent frequent filer prisoner indigents from proceeding IFP in state court. *See Wilson,* --- F.3d at ----, slip op. at 13; *see also Hampton,* 106 F.3d at 1284 (The PLRA "does not affect an inmate's ability to seek relief in state court or through state grievance procedures."). *But cf. Lyon v. Krol,* 940 F.Supp. 1433, 1437 (S.D.Iowa 1996) ("Although inmates can also bring § 1983 claims in state court, plaintiffs have an important interest in access to federal courts for vindication of their federal constitutional rights."), *appeal dismissed and remanded,* 127 F.3d 763 (8th Cir.1997).

[10]No other circuit has apparently addressed whether section 1915(g) violates the separation of powers. *See Carson,* 112 F.3d at 821 n. 3 (allegation that "congress [sic] wrongfully meddled

9

Rivera's argument fails. As we explained in the preceding part of this opinion, section 1915(g) neither creates nor takes away any cause-of-action from frequent filer prisoners. Congress simply decided that the government need not subsidize these prisoners' lawsuits and appeals. *See generally* U.S. Const. art. I § 8 (Congress's spending power). As long as frequent filer prisoners prepay the entire filing fee, courts will review their cases in the same manner as any other. Additionally, because section 1915(g) is purely procedural, Congress in no way "prescribe[d] rules of decision to the judicial department of the government in cases pending before it[.]" *Klein,* 80 U.S. (13 Wall.) at 146.

The Supreme Court authorities upon which Rivera relies support, rather than belie, our conclusion. First, the unconstitutional legislation at issue in *Plaut v. Spendthrift Farm, Inc.,* 15 U.S.C. § 78aa-1, "command[ed] the federal courts to reopen final judgments[.]" 514 U.S. 211, 219, 115 S.Ct. 1447, 1453, 131 L.Ed.2d 328 (1995). Section 1915(g), in contrast, recognizes the full force and effect of federal courts' final judgments. It simply attaches an unremarkable consequence, that is, denial of IFP status, to three or more judgments/dismissals on certain grounds that courts, not Congress, exclusively control.

Next, Rivera cites *Martinez v. Lamagno* to support the notion that counting prisoners' strikes is too "petty" a task for a court to perform and still retain its independence. 515 U.S. 417, 426, 115 S.Ct. 2227, 2232, 132 L.Ed.2d 375 (1995). *Martinez,* however, was simply a statutory construction case. The issue in that case—whether a federal court may review the Attorney General's certification that a federal agent acted within the scope of employment during his allegedly tortious

with the judiciary" did not preserve prisoner's argument that section 1915(g) violates the separation of powers).

10

conduct—did not turn on separation of powers principles. Instead, in its attempt to ascertain the "purpose of Congress" behind the statute at issue, the Court rejected the agent's reading of the statute; that is, that the executive branch's finding of fact bound the district court. *Martinez,* 515 U.S. at 424, 115 S.Ct. at 2231. Labeling this construction "perplexing," "anomalous," "strange" and "untenable," the Court opined that it "would cast Article III judges in the role of petty functionaries, persons required to enter as a court judgment an executive officer's decision, but stripped of capacity to evaluate independently whether the executive's decision is correct." *Martinez,* 515 U.S. at 426, 429-30, 115 S.Ct. at 2232, 2233-34. Interestingly enough, the Court declined to employ the phrase "unconstitutional" or "potentially unconstitutional" among the other colorful adjectives used to describe the agent's reading of the statute.

Even if *Martinez* could fairly be read as a separation of powers case, section 1915(g) calls for more than just the performance of "petty" judicial tasks. 515 U.S. at 426, 115 S.Ct. at 2232. Prior to denying leave to proceed IFP, courts must review a frequent filer prisoner's well-pled allegations to ensure that the prisoner is not "under imminent danger of serious physical injury." 28 U.S.C.A. § 1915(g). Similarly, the task of counting strikes involves more than sophomoric arithmetic. Courts must search records of the prisoner's prior federal cases to determine whether judicial officers "on 3 or more prior occasions" entered orders of dismissals and, if so, whether the reason for the dismissals were frivolousness, maliciousness or failure to state a claim upon which relief may be granted. 28 U.S.C.A. § 1915(g).

Finally, our conclusion reconciles with *United States v. Sioux Nation of Indians,* where the Court held that "Congress' mere [statutory] waiver of the res judicata effect of a prior judicial decision rejecting the validity of a legal claim against the United States does not violate the doctrine

11

of separation of powers." 448 U.S. 371, 407, 100 S.Ct. 2716, 2737, 65 L.Ed.2d 844 (1980). Inherent in its holding, the *Sioux Nation* Court wrestled with issues of interbranch conflicts-of-interest in a judicial proceeding. In fact, the Court distinguished the facts of *Sioux Nation* from the facts of *Klein,* where "Congress was attempting to decide the controversy at issue in the Government's own favor." *Sioux Nation,* 448 U.S. at 405, 100 S.Ct. at 2735; *Klein,* 80 U.S. (13 Wall.) at 146-47. Unlike in *Sioux Nation* or *Klein,* however, the United States is not a party to the underlying lawsuit in this case. Rivera is in the custody of Florida, not the United States.

Section 1915(g), of course, applies with equal force to federal prisoners with three strikes. The fact remains, however, that in enacting the purely procedural section 1915(g), "Congress made no effort ... to control [federal courts'] *ultimate* decision of [frequent filer prisoners'] claim[s]" sought to be litigated under the IFP statute. *Sioux Nation,* 448 U.S. at 405, 100 S.Ct. at 2735 (emphasis added). Accordingly, we hold that section 1915(g) does not violate the separation of powers.

C.

The Fifth Amendment prohibits the federal government from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend V. "[T]his clause ... provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate,* 20 F.3d 1550, 1555 (11th Cir.1994) (*en banc*), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). Rivera does not specify the kind of due process that he claims section 1915(g) violates. Instead, he advances the case of *Richards v. Jefferson County, Ala.,* 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996), and asserts that section 1915(g)'s "three strikes" provision is the functional equivalent of an unconstitutional application of *res judicata.*

In *Richards,* a group of workers filed a lawsuit in state court challenging a local occupation tax as unconstitutional. 517 U.S. at 794-95, 116 S.Ct. at 1764. On appeal, the Alabama Supreme Court concluded that *res judicata* barred the lawsuit because another group of workers with "essentially identical" interests had previously and unsuccessfully challenged the same tax. 517 U.S. at 796-97, 116 S.Ct. at 1765. The United States Supreme Court reversed, holding that this "extreme" application of *res judicata* failed to provide the present group of workers due process of law. 517 U.S. at 796-97, 116 S.Ct. at 1765. The Court reasoned that to effectuate the "deep-rooted historic tradition that everyone should have his own day in court[,]" the former group of workers' judgment did "not conclude the right of strangers to those proceedings." 517 U.S. at 798, 116 S.Ct. at 1766 (internal quotation marks and citations omitted).

Rivera contends that section 1915(g), like an "extreme" application of *res judicata,* effectively precludes frequent filer prisoner indigents from bringing future claims as a result of dismissals of factually unrelated prior cases. We, however, are not persuaded. Rivera's analogy to *Richards* merely re-advances, albeit creatively, his position that section 1915(g) abridges his First Amendment right to access the courts, which we have rejected in section II, part A of this opinion.

In any event, *Richards* has no application to the "three strikes" provision. Unlike the present group of workers in *Richards,* Rivera was a party to the prior cases. Indeed, Rivera had a full and fair "opportunity to participate in" at least three prior cases before the district court revoked his privilege to proceed IFP. *Richards,* 517 U.S. at 802, 116 S.Ct. at 1768. The only consequence flowing from Rivera's prior dismissals—in contrast to the state supreme court's use of the former group of workers' unsuccessful lawsuit in *Richards*—is denial of future applications to pay only a partial, as opposed to the entire, filing fee. As we have reiterated time and again, section 1915(g)

13

does not, in and of itself, dictate any specific decision on the merits. *See* Dist. Ct. Order at 2 (denying Rivera's lawsuit without prejudice, stating that he "may initiate a new civil rights action by filing a new civil rights complaint form and the full $150.00 filing fee").

Accordingly, we hold that section 1915(g) does not violate Rivera's and similarly situated prisoners' Fifth Amendment right to due process of law.[11] *Accord Parsell v. United States,* 218 F.2d 232, 235 (5th Cir.1955) (denying leave to proceed IFP "does not offend the requirements of due process"); *cf. Hampton,* 106 F.3d at 1287 ("Hampton's ability to petition the government for redress of grievances has not been deprived or limited by the [PLRA] and thus that interest cannot provide the basis for a due process violation.").

D.

"[I]f a law neither burdens a fundamental right nor targets a suspect class," it does not violate the Fourteenth Amendment's Equal Protection Clause, as incorporated through the Fifth Amendment's Due Process Clause, "so long as it bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996) (discussing the Fourteenth Amendment's Equal Protection Clause); *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 217, 115 S.Ct. 2097, 2107, 132 L.Ed.2d 158 (1995) (Fifth Amendment right of equal protection is "precisely the same" as Fourteenth Amendment right of equal protection) (internal quotation

---

[11]Although the Supreme Court, like Rivera, did not specify the kind of due process relied upon, we read *Richards* as a procedural due process case. Even if Rivera's challenge could fairly be read to implicate substantive due process, however, we find no such violation. *See Wilson,* --- F.3d at ----, slip op. at 15 ("[T]he provisions of 28 U.S.C. § 1915(g) do not contravene substantive due process principles."); *cf. Hampton,* 106 F.3d at 1288 (rejecting prisoner's substantive due process claim as to the PLRA's partial filing fee provision because it does not "violate[ ] any right, privilege, or immunity secured by the Constitution or by federal statute" and passes rational basis review) (internal quotation marks omitted).

14

marks and citations omitted). Rivera does not, and cannot, contend that prisoner indigents (specifically, frequent filer prisoner indigents) form a suspect or quasi-suspect class. *See Carson,* 112 F.3d at 821-22 ("Neither prisoners nor indigents constitute a suspect class."); *Mitchell,* 112 F.3d at 1488 n. 2 ("Mitchell ... does not contend that prisoners (or specifically indigent prisoners) are a suspect class[.]"). And, for the reasons stated in section II, part A of this opinion, section 1915(g) does not burden a fundamental right. As such, we decline Rivera's invitation to review section 1915(g) under any standard more onerous than rational basis.

Unquestionably, the ends that Congress enacted section 1915(g) to achieve—the curtailment of "abusive prisoner tort, civil rights and conditions litigation" and "preserving scarce judicial resources"—are legitimate. *Mitchell,* 112 F.3d at 1488 (citing *Anderson,* 111 F.3d at 805); *Carson,* 112 F.3d at 822; *see also Hampton,* 106 F.3d at 1287 ("Deterring frivolous prisoner filings in the federal courts falls within the realm of Congress's legitimate interests[.]"); *Roller,* 107 F.3d at 234 (Congress sought to curtail "abuse of the federal judicial system by inmates[.]").

Section 1915(g) rationally serves these ends through its requirement that prisoner indigents with three strikes prepay the entire filing fee before the court may further review their lawsuit (unless imminent danger of serious physical injury exists). In *Mitchell,* we found a rational relation between the PLRA's ends, that is, curtailing abuse of the federal judicial system, and its means, that is, requiring only prisoner indigents, as opposed to non-prisoner indigents, to prepay a partial filing fee. *See* 112 F.3d at 1488 ("Clearly, Congress had a rational basis to believe that the fee requirements of the PLRA would further [its] objective.") (citations omitted); *see also Roller,* 107 F.3d at 233 ("The PLRA amendments easily satisfy the rational basis standard."). It is equally rational for Congress to separate frequent filer prisoner indigents from prisoner indigents who file

15

less frequently and disqualify the former class from the luxury of having to advance only a partial amount (or, if the prisoner is destitute, no amount) of the filing fee.

Plainly, Congress had a rational basis to believe that revoking altogether IFP privileges from prisoners with a demonstrated history of abuse—that is, three of more dismissals on specified grounds—would further the goal of curtailing abusive prison litigation. Congress did not enact the PLRA in a vacuum. It held hearings and rendered findings, concluding that prisoners file more frivolous lawsuits than any other class of persons. *See Hampton,* 106 F.3d at 1286-87 (quoting legislative history). Certainly, Congress could rationally build upon this notion in targeting the most litigious of this already-litigious class of persons. *See Carson,* 112 F.3d at 822 ("It is ... undebatable that prohibiting litigants with a history of frivolous or malicious lawsuits from proceeding IFP will deter ... abuses [of the federal judicial system].").[12]

Rivera has little, if any, Article III support for his contention. In *Lyon v. Krol,* the district court held that section 1915(g) violated the equal protection rights of prisoners that would otherwise qualify for IFP status. 940 F.Supp. 1433, 1439 (S.D.Iowa 1996). Two judges of the Eighth Circuit, however, dismissed the appeal, concluding that Lyon lacked standing to challenge section 1915(g)'s constitutionality because sufficient funds existed in his prison account to prepay the entire filing fee.

---

[12]The Sixth Circuit recently held that section 1915(g) does not run afoul of the Equal Protection Clause:

> In an effort to lessen the crush of [frivolous] filings on the courts, Congress has concluded that prisoners who are not under threat of immediate harm and who have, on at least three prior occasions, filed frivolous lawsuits should be barred, not from ever filing another law suit in federal court, but merely from instituting such claims at additional expense to the taxpayers. Such [disparate treatment] ... has a rational basis.

*Wilson,* --- F.3d at ----, slip op. at 12.

16

*Lyon,* 127 F.3d at 765-66. Whereupon, the court remanded the case "so that the district court may set a time by which [the prisoner] must pay the filing fee or have [the] underlying ... claim dismissed." 127 F.3d at 766. One judge filed a dissenting opinion, agreeing with the district court that "section 1915(g) violates prisoners' equal protection rights." 127 F.3d at 766 (Heaney, J., dissenting). Of course, neither the district court's order nor the circuit judge's dissenting opinion is precedent in this or any other circuit, and we do not find these judges' view persuasive.

Rather, for the reasons stated above, we, like the Fifth and Sixth Circuits, hold that section 1915(g) does not violate the Fourteenth Amendment right to equal protection, as incorporated through the Fifth Amendment. *See Wilson v. Yaklich,* --- F.3d ----, ----, Nos. 96-3023, 96-4323, slip op. at 13 (6th Cir. June 8, 1998); *Carson,* 112 F.3d at 821-22.

E.

Generally, federal courts apply the law that exists at the time they render a decision rather than "the law that existed when the conduct took place[.]" *Landgraf v. USI Film Products,* 511 U.S. 244, 264-65, 114 S.Ct. 1483, 1496-97, 128 L.Ed.2d 229 (1994) (internal quotation marks and citation omitted). Courts may not, however, apply existing statutory law to past conduct if it would contradict Congress's express intent or produce a "retroactive effect." *See Landgraf,* 511 U.S. at 268, 280, 114 S.Ct. at 1498, 1505; *Mitchell,* 112 F.3d at 1486.[13] Rivera contends that the district

---

[13]Nor may courts apply existing statutory law to past conduct if it would violate the *Ex Post Facto,* Takings, Bills of Attainder or Due Process Clauses. *See Landgraf,* 511 U.S. at 266-67, 114 S.Ct. at 1497-98. At best, Rivera contends that section 1915(g) violates only one of these clauses, the Due Process Clause. We addressed and rejected that contention in section II, part B of this opinion. We note that the Sixth Circuit recently rejected a prisoner's contentions that section 1915(g) violates the *Ex Post Facto* Clause and constitutes a bill of attainder. *See Wilson,* --- F.3d at ---- - ----, slip op. at 15-16.

17

court's counting as strikes his prison-generated cases dismissed prior to the enaction of the PLRA brought about a "retroactive effect" that Congress did not prescribe.

Initially, we look to see if "Congress has ... spoken on the issue." *Mitchell,* 112 F.3d at 1486. "If Congress has done so, of course, there is no need to resort to judicial default rules." *Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505. We agree with the Ninth Circuit that the language of section 1915(g)—especially the express reference to "prior occasions"—"makes clear its application to claims dismissed *prior* to the current proceedings." *Tierney v. Kupers,* 128 F.3d 1310, 1311 (9th Cir.1997). To be sure, this conclusion is entirely in line with the PLRA's purpose:

> To interpret [section 1915(g) ] as only applying to actions commenced after April 26, 1996, the effective date of the PLRA, would give every prisoner, regardless of the number of prior frivolous suits, three *more* opportunities to pursue frivolous actions-without paying any filing fees. Multiplying the number of litigious prisoners across the United States by a factor of three potentially frivolous actions per prisoner demonstrates how such an interpretation would frustrate, rather than advance, the congressional goal of reducing frivolous prisoner litigation in federal court.

*Tierney,* 128 F.3d at 1311-12.[14] Similarly, the Tenth Circuit concluded that a "textual analysis ... suggests that Congress intended § 1915(g) to apply to prisoner actions dismissed prior to its enactment." *Green v. Nottingham,* 90 F.3d 415, 419 (10th Cir.1996) (relying on "prior occasions" language).[15] *But cf. Wilson,* --- F.3d at ----, slip op. at 10 ("[T]he statute ... lacks the kind of

---

[14]We recognize that the above-quoted excerpt is a bit imprecise. Under the PLRA, prisoners without three strikes can proceed "without paying any filing fee" only if they have "no assets and no means by which to pay the initial partial filing fee" that section 1915(b)(1) requires. 28 U.S.C.A. § 1915(b)(4). Nevertheless, *Tierney*'s observation of Congress's clear intent is instructive.

[15]In *Green,* the Tenth Circuit held that

> [b]ecause the plain language of § 1915(g) strongly suggests that Congress intended courts to consider prisoner suits dismissed prior to the statute's enactment, and applying this procedural rule in such a manner would not have a

18

unambiguous directive that clearly shows Congress intended § 1915(g) to apply to suits dismissed prior to its enactment.") (internal quotation marks and citations omitted).

Even if section 1915(g)'s past tense and backward-looking language is not an "unambiguous directive" on the part of Congress, our application of the *Landgraf* factors fosters the same result. 511 U.S. at 263, 114 S.Ct. at 1496. First, we consider "whether [section 1915(g) ] would impair rights a party possessed when he acted[.]" *Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505. That is not a difficult question to answer. As we stated earlier, proceeding IFP has always been a privilege, not a right. *See Adepegba,* 103 F.3d at 386; *accord Parsell,* 218 F.2d at 235 (proceeding IFP on appeal "is a privilege and not a right").[16] Prior to the PLRA, it was within a federal court's discretion to grant leave to proceed IFP to a prisoner. *Compare* 28 U.S.C. § 1915(a) (1994) (court "may" authorize lawsuit or appeal "without prepayment of fees and costs") *with* 28 U.S.C.A. § 1915(b) (West Supp.1998) (court "shall" require prisoners with some financial means but without three strikes "to pay the full amount of a filing fee[,]" at least in installments), 28 U.S.C.A. § 1915(g) (West Supp.1998) (court "shall" require prepayment of the entire filing fee from frequent filer prisoners). Indeed, when we have reviewed a district court's denial of an application to proceed IFP, our review has been only for abuse of discretion. *See generally Parsell,* 218 F.2d at 235-36. Thus, prior to the passage of the PLRA, Rivera did not possess "anything more than an expectation interest" in proceeding IFP. *Mitchell,* 112 F.3d at 1487.

---

retroactive effect, we conclude that § 1915(g) requires us to consider prisoner suits dismissed prior to the statute's enactment.

90 F.3d at 420.

[16]In *Adepegba,* the Fifth Circuit held that section 1915(g) raises no retroactivity concerns under *Landgraf. Adepegba,* 103 F.3d at 385-87.

Second, we must determine whether section 1915(g) increases Rivera's "liability for past conduct." *Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505. That too is an easy question. Litigants have always been liable for filing fees. *See Adepegba,* 103 F.3d at 386 (Section 1915(g) "does not impose new or additional liabilities, but instead requires collection of a fee that was always due."); *Abdul-Wadood v. Nathan,* 91 F.3d 1023, 1025 (7th Cir.1996) ("All § 1915 has ever done is excuse *pre*-payment of the docket fees; a litigant remains liable for them, and for other costs, although poverty may make collection impossible."); *accord Collier v. Tatum,* 722 F.2d 653, 655 (11th Cir.1983) ("[W]e hold that a district court may, in its discretion, require a partial filing fee of a prisoner-plaintiff who has some assets but is unable to pay the full amount of the fee."). Section 1915(g), like other provisions of the PLRA, is purely procedural. *Tierney,* 128 F.3d at 1312 (Section 1915(g) "does not impair any substantive rights of prisoners[.]"); *Adepegba,* 103 F.3d at 386 ("Although section 1915(g) attaches consequences to past actions, we find that these consequences are matters of procedure."); *Green,* 90 F.3d at 420 (Section 1915(g) "does not change the legal consequences of prisoner actions dismissed before the statute's enactment."); *cf. Mitchell,* 112 F.3d at 1486 (Section § 1915(e)(2)(B) is "wholly procedural[.]").

Finally, we summarily find that section 1915(g) "impose[s][no] new duties with respect to transactions already completed." *Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505. Rivera certainly does not, and never has had, a "duty" to file a civil lawsuit, with or without a filing fee.

We recognize that Congress's "responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals." *Landgraf,* 511 U.S. at 266, 114 S.Ct. at 1497. Policy considerations, however, "do not figure in the *Landgraf* analysis." *Wright v. Morris,* 111 F.3d 414, 421 (6th Cir.), *cert. denied,* ---

20

U.S. ----, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997). Accordingly, we join other circuits in concluding that under section 1915(g), federal courts may properly count as strikes lawsuits or appeals dismissed as frivolous, malicious or failing to state a claim upon which relief may be granted prior to April 26, 1996. *See Wilson,* --- F.3d at ----, slip op. at 11 ("[W]e ... hold that dismissals of previous actions entered prior to the effective date of the PLRA may be counted toward the "three strikes' referred to in 28 U.S.C. § 1915(g)."); *Garcia v. Silbert,* , 141 F.3d 1415, 1417 (10th Cir.1998) ("[C]ourts must consider cases dismissed prior to [April 26, 1996] in determining whether the criteria for dismissal under § 1915(g) have been satisfied."); *Keener v. Pennsylvania Bd. of Probation & Parole,* 128 F.3d 143, 144 (3d Cir.1997) ("We ... join those [other] circuits in holding that dismissals for frivolousness prior to the passage of the PLRA are included among the three that establish the threshold issue for requiring a prisoner to pay the full docket fees[.]").

F.

Under section 1915(g), prisoners obtain a "strike" against them for purposes of future IFP eligibility when their "action or appeal in a court of the United States [is] dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C.A. § 1915(g). Recognizing that it is the prisoner's burden to produce sufficient record information about "prior occasions" to the appellate court, Rivera advances a copy of dismissal orders in two prior district court lawsuits, *Rivera v. Arocho,* 96-275-CIV-J-99(S), and *Rivera v. Parker,* 96-325-CIV-J-10, contending that they were not strikes.[17]

---

[17]Rivera concedes the existence of one "strike" against him, *Rivera v. Tornin,* 93-170-CIV-ORL-22.

We, however, find no error on the part of the district court in counting these two cases as strikes. First, the dismissal in *Arocho* was the equivalent of a dismissal for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), of which section 1915(g) tracks the language. *Cf. Mitchell,* 112 F.3d at 1490 ("[W]e will apply Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii)[.]"). *Compare* Fed.R.Civ.P. 12(b)(6) ("failure to state a claim upon which relief can be granted") *with* 28 U.S.C.A. § 1915(g) ("fails to state a claim upon which relief may be granted"), 28 U.S.C.A. § 1915(e)(2)(B)(ii) ("fails to state a claim upon which relief may be granted"). According to the district court's order in *Arocho,* Rivera's complaint stated "no cause of action for money damages under § 1983 unless and until the prison disciplinary proceeding resulting in a loss of gain time is challenged and reversed by an internal administrative ruling, declared invalid by a state court, or called into question by a federal court's issuance of a writ of habeas corpus." Appellant's Brief, App. C, Dist. Ct. Order at 6. Since Rivera's complaint lacked any allegations of exhaustion of remedies, the district court dismissed Rivera's claim without prejudice.

A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted. *See Wright,* 111 F.3d at 417 (stating that prior to April 26, 1996, courts could require exhaustion of available remedies in the interest of justice; citing pre- and post-PLRA versions of 42 U.S.C. § 1997e(a) and *Patsy v. Board of Regents,* 457 U.S. 496, 502-07, 508-12, 102 S.Ct. 2557, 2560-63, 2563-66, 73 L.Ed.2d 172 (1982)); *see, e.g., Porter v. Fox,* 99 F.3d 271, 274 (8th Cir.1996) ("Porter failed to state a claim upon which relief could be granted. Porter did not allege he exhausted his administrative remedies...."); *Sharps v. United States Forest Service,* 28 F.3d 851, 853 (8th Cir.1994) ("Because Sharps alleged claims ... for which he

failed to exhaust administrative remedies, we hold that the district court did not err in dismissing Sharps's amended complaint [under Rule 12(b)(6) ]."); *Rodriguez v. Berbary,* 992 F.Supp. 592, 593 (W.D.N.Y.1998) (collecting cases where "courts have required a plaintiff to exhaust his administrative remedies before bringing a § 1983 action with respect to prison conditions"); *Dutton v. Board of County Comm'rs of Johnson County, Kan.,* No. 93-2184-G (D.Kan. Aug.18, 1993). Indeed, Rivera himself conceded at oral argument that a wide variety of claims—even those that have ostensible merit—fall within the Rule 12(b)(6) standard. *See Mitchell,* 112 F.3d at 1492 (discussing the difference between frivolousness and failure to state a claim, citing *Neitzke v. Williams,* 490 U.S. 319, 329-30, 109 S.Ct. 1827, 1833-34, 104 L.Ed.2d 338 (1989)) (Lay, J., concurring). Presuming, as we must, the legal correctness of the district court's dismissal in *Arocho,* we find that it constitutes a "prior occasion" under section 1915(g). *Cf. Patton v. Jefferson Correctional Center,* 136 F.3d 458, 464 (5th Cir.1998) (Excusing a prisoner's frivolous § 1983 actions "from the reach of the PLRA's "three strikes' proviso simply because the cases included unexhausted habeas claims" would allow "litigious prisoners [to] immunize frivolous lawsuits from the "three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits.").

The district court's dismissal without prejudice in *Parker* is equally, if not more, strike-worthy. In that case, the court found that Rivera had lied under penalty of perjury about the existence of a prior lawsuit, *Arocho.* As a sanction, the court dismissed the action without prejudice, finding that Rivera "abuse[d] the judicial process[.]" Appellant's Brief, App. A, Dist. Ct. Order at 2. Although the district court may not have uttered the words "frivolous" or "malicious," dismissal for abuse of the judicial process is precisely the type of strike that Congress envisioned when

drafting section 1915(g). *E.g., Roller,* 107 F.3d at 234 (Congress sought to curtail "abuse of the federal judicial system[.]"). Accordingly, we hold that the district court did not err in counting *Arocho* and *Parker* as strikes against Rivera.[18]

### III. CONCLUSION

For the foregoing reasons, we hold that the "three strikes" IFP provision of 28 U.S.C.A. § 1915(g) does not violate the First Amendment right to access the courts; the separation of judicial and legislative powers; the Fifth Amendment right to due process of law; or the Fourteenth Amendment right to equal protection, as incorporated through the Fifth Amendment. We further hold that federal courts in this circuit may properly count as strikes lawsuits or appeals dismissed as frivolous, malicious or failing to state a claim upon which relief may be granted prior to April 26, 1996. Finally, the district court did not err in counting as strikes two of Rivera's prior lawsuits, *Rivera v. Arocho,* 96-275-CIV-J-99(S), and *Rivera v. Parker,* 96-325-CIV-J-10.

AFFIRMED.

---

[18]Rivera may very well have more than three strikes, in light of his reference to *Rivera v. Singletary,* 96-1307-CIV-J-99C, and *Rivera v. Perrin,* 96-650-CIV-J-20B, in objecting to the Northern District magistrate judge's report and recommendation to transfer the instant case to the Middle District.

Given our affirmance of the district court's three-strike count, Rivera received a windfall from this court when the clerk allowed him to pay our filing fee in installments. Normally, section 1915(g) would dictate that we order Rivera to submit forthwith the balance of the filing fee. *Cf. Garcia v. Silbert,* 141 F.3d 1415, 1417 n. 1 (10th Cir.1998) ("Because Garcia's complaint does not allege imminent harm and he has had at least three prior actions dismissed as frivolous, he should not have been permitted to appear before this court without full prepayment of all required fees.... [W]e direct the clerk accordingly to enter an order requiring Mr. Garcia to remit the entire balance due this court."). Because Rivera's appeal brought important constitutional issues of first impression before us, however, we will not enter such an order. Rivera may continue to pay in the installments that our clerk ordered.