James **LUEDTKE**, Plaintiff,

v.

Daniel **BERTRAND**, Defendant.

No. 98–C–1133.

United States District Court,
E.D. Wisconsin.

Jan. 13, 1999.

James Luedtke, Green Bay, WI, pro se.

### DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on James Luedtke's ("Luedtke") objections to

the Recommendation of Magistrate Judge Aaron E. Goodstein denying his petition to proceed *in forma pauperis* ("IFP") in connection with his prisoner civil rights action and dismissing the case. The Recommendation is adopted for the following reasons.

## I

Luedtke is a serial litigator. He has filed numerous federal civil rights lawsuits while incarcerated, both in the Western District of Wisconsin and here in the Eastern District of Wisconsin. As far as the Court can tell, he has yet to succeed in any of his lawsuits—a consequence, he claims, of the "lies" and "dirty tricks" of the Wisconsin Attorney General's office, but more likely an indication of the suspect nature of his many claims. In any event, the Prison Litigation Reform Act of 1995 ("PLRA") established new methods and procedures for prisoner litigation, most of which were designed to reduce the number of frivolous lawsuits, as well as the number of serial litigators like Luedtke. One such procedure concerns the payment of filing fees. Prior to the PLRA, filing fees were often waived in prisoner cases because prisoners were typically indigent and did not have the funds necessary to pay the filing fee outright. The PLRA changed this, acknowledging that, because an inmate's basic necessities of life (food, clothing, shelter) are provided and paid for by the State, most prisoners can afford to pay a filing fee, provided it is paid in small installments over time. To that end, the PLRA established a payment scheme and formula by which prison officials calculate and submit an "initial partial filing fee" from a prisoner's trust account to the respective district or appellate courts in which he has filed certain actions, and over time these same officials calculate and submit additional payments from the account until the applicable filing fee is paid in full. 28 U.S.C.A. § 1915(b) (Supp.1998). Such payments are calculated and submitted even if a case is subsequently dismissed, so long as a balance remains due and owing. However, no prisoner is denied access to the federal courts if he has no funds or income whatsoever. The PLRA provides, "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets

and no means by which to pay the initial partial filing fee." 28 U.S.C.A. § 1915(b)(4) (Supp.1998).

A question of interpretation arises in this case as to the latter provision. Luedtke currently has three cases outstanding in the Eastern District, all of which have large balances due and owing with respect to the applicable filing fees. Periodic fees are not and have not been coming in on these cases since April 23, 1998. For this reason, Magistrate Goodstein recommends prohibiting Luedtke from going forward with any additional cases until the filing fees for his prior cases are paid in full, following the lead of Judge Shabaz, who has already issued such an order against Luedtke in the Western District. The recommendation, and Judge Shabaz's order, are based on *Thurman v. Gramley*, 97 F.3d 185, 188 (7th Cir.1996), where the 7th Circuit indicated that if a prisoner fails to pay the filing fees as provided by the PLRA "for any reason other than destitution," the same constitutes "a voluntary relinquishment of the right to file future suits in forma pauperis—just as if the prisoner had a history of frivolous litigation, and § 1915(g) required prepayment." Magistrate Goodstein reviewed Luedtke's trust account records and noted that Luedtke failed to pay the filing fees "despite the fact that he received small deposits in his trust account until June 1998 and continues to receive legal loans on a regular basis," and concluded therefrom that Luedtke's nonpayment of fees was due to his tendency to spend money as soon as he receives it, rather than his "destitution."

The Court thinks that the Magistrate's ruling in so far as it relates to the repayment of legal loans and victim witness surcharges and Luedtke's trust account requires some elaboration. While Luedtke bears responsibility for making payments from deposits made to his trust account up to June 1998 and the Magistrate was correct in calling Luedtke to task on this score, prison's policies regarding repayment of legal loans and victim witness surcharges can prevent a prisoner from submitting periodic payments from this source. Here, Luedtke has a large balance due and owing for "legal loans" issued by the prison to cover the copying and postage costs incurred in preparing and mail-

ing his many legal documents. He also has outstanding victim witness surcharges. To repay these amounts, it appears the prison automatically deducted certain amounts—designated as "withholding"—from the funds "credited" to Luedtke's account as his bi-weekly pay from his prison job, a job which seems to have terminated in mid-June, 1998. After June 17, 1998, Luedtke received no more income, and the only credits to his account were paper credits entered as "legal loans" whenever he needed to copy and/or mail a legal document, credits which were immediately canceled out by the corresponding charge for the copying or postage at issue. Put another way, it does not appear that "legal loans" are funds which are disbursed or credited to an inmate's account to be used as he wishes, and which therefore can be directed to the payment of filing fees in civil litigation. Rather, they are simultaneous credits and debits to a prisoner's account for the sole purpose of enabling prisoners to purchase "paper, photocopy work, or postage" on credit. Wis.Admin.Code DOC § 309.51. Thus, Luedtke's legal loans were not available to pay down his filing fees in the Eastern District, and his prison wages (of which he's had none since June 17, 1998) were not available by virtue of *the prison's policy* of first withholding amounts due for victim surcharges and legal loan balances. Thus, while there may be a conflict between the PLRA and the prison's practice of deducting other amounts from a prisoner's account prior to deductions under the PLRA, said conflict is not the prisoner's creation and by itself would not disqualify him from the PLRA's guarantee that no prisoner will be prohibited from filing a civil lawsuit or appeal simply because he does not have the means to pay a partial filing fee. However, where, as here, the prisoner exhausts his trust account because of serial lawsuits of an egregiously frivolous nature, in other words where he creates his own "destitution" through such acts, he cannot claim the exception. To allow a prisoner to behave in this

fashion would frustrate the purpose of the Act. The Court concludes that Luedtke is barred from filing additional actions on this basis. While the Magistrate's finding that Luedtke failed to contribute anything from the deposits made to his trust account since April 1998 under the aforesaid circumstances is enough to bar Luedtke from filing, there are other related reasons for said bar as discussed below.

## II

■ The related reasons preventing Luedtke from going forward are the following. Under the PLRA, a prisoner who has had three prior civil rights lawsuits dismissed on grounds that they were frivolous, malicious or fail to state a claim has only a very limited right to file additional civil rights lawsuits:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C.A. § 1915(g) (Supp.1998). "This provision of the PLRA, 'commonly known as the "three strikes" provision,' requires frequent filer prisoners to prepay the entire filing fee before federal courts may consider their lawsuits and appeals." *Rivera v. Allin*, 144 F.3d 719, 723 (11th Cir.1998).

Here, Luedtke's first strike came in *Luedtke v. Endicott*, Case No. 95–C–358, where on June 5, 1995 Judge Crabb of the Western District of Wisconsin dismissed Luedtke's 8th Amendment claim with prejudice due to a lack of standing, *i.e.*, failure to state a claim upon which relief can be granted.[1] The second came in *Luedtke v. Wegen-*

---

1. The "three-strike" rule applies to cases dismissed (on any of the three enumerated grounds) *both before and after* the PLRA's enactment. *Evans v. Illinois Department of Corrections*, 150 F.3d 810, 811 (7th Cir.1998). Also, in *Luedtke v. Endicott*, in addition to dismissing the 8th Amendment claim with prejudice, Judge Crabb

dismissed corresponding state law claims without prejudice, on the ground that the claim providing the basis for federal subject matter jurisdiction had been dismissed from the case. This latter fact does not, and should not, disqualify the case from being counted as a "strike" for purposes of § 1915(g). The provisions of the

*er*, Case No. 96–C–396, where on April 11, 1996 Judge Curran of the Eastern District of Wisconsin dismissed Luedtke's § 1983 claim as frivolous under the ruling of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994).[2] The third came in *Luedtke v. Gudmanson,* 971 F.Supp. 1263 (E.D.Wis.1997), where on July 22, 1997 Judge Reynolds of the Eastern District of Wisconsin dismissed Luedtke's several claims as lacking any arguable merit and specifically directed the Clerk's office to document the fact that Luedtke brought an action that was dismissed as frivolous. Therefore, Luedtke has three strikes pending against him and is restricted by the terms of § 1915(g).

■ "The only exception to section 1915(g) is if the frequent filer prisoner is 'under imminent danger of serious physical injury.'" *Rivera,* 144 F.3d at 723 (quoting, 28 U.S.C.A. § 1915(g)). Here, the Magistrate concluded that "Luedtke does not allege that he is under imminent threat of serious physical injury,...." The Court agrees and finds from an independent review that the complaint contains no express allegation relating to an imminent threat of serious physical injury. The Court cannot say that such an allegation is sufficiently pled particularly by Luedtke, who is an experienced and serial litigator. More is required for him to prevail. The one claim alleging actual physical injury relates to an event which took place prior to filing, but the exception for claims concerning an "imminent danger of serious physical injury" cannot be triggered solely by complaints of past abuse. *See, Ashley v. E. Dilworth, Co–1,* 147 F.3d 715, 717 (8th Cir. 1998); *Banos v. O'Guin,* 144 F.3d 883, 884–85 (5th Cir.1998); *but see contra, Gibbs v. Roman,* 116 F.3d 83, 86 (3rd Cir.1997). Luedtke's vague allegation of a conspiracy among the defendants to beat, assault, injure, harass and retaliate against him are not enough. These allegations are insufficient and lack the specificity necessary to show an *imminent* threat of *serious* physical injury. Thus, Luedtke's claims for injunctive relief to prevent *future* assaults and injuries must be rejected.

Even if Luedtke was allowed to proceed he could go forward only on the claims which meet the exception. The vast majority of Luedtke's claims do not allege or seek to prevent an imminent danger of serious physical injury, *i.e.,* damage claims stemming from past assaults, confiscation of personal property, frustration of legal actions, inadequate cell size and double-ceiling inmates, overcrowding, banning of pornographic materials, and restrictions on personal or business mail. The question thus arises: If Luedtke was allowed to proceed on his claims for injunctive relief described above without prepaying the filing fee, can these other claims, which do not fit within the "imminent danger" exception, go along for the ride? The answer is "no." Such an approach is inconsistent with the underlying principles of the three-strike provision. That provision is intended to prevent serial filers of frivolous litigation like Luedtke from pursuing claims unrelated to the prevention of serious physical injury. It achieves this by creating a financial hurdle for such claims which most prisoners cannot overcome, or which they choose not to overcome. To allow a prisoner to get around this gate-keeping mechanism by joining an allegation of imminent injury with a parade of other claims having nothing to do with an imminent danger to a prisoner's physical well-being would quickly eviscerate the three-strike rule and frustrate the clear objectives of the United States Congress.

PLRA were intended to reduce the number of meritless prisoner lawsuits filed in federal court, not state court. Luedtke's 8th Amendment claim was the only basis upon which he could work his prior lawsuit into federal court, and that claim was dismissed on its merits for failure to state a claim. Thus, Luedtke's federal lawsuit lacked merit because the federal claim which enabled it to be filed as a federal lawsuit lacked merit. Judge Crabb's corresponding decision to decline pendant jurisdiction over a remaining state law claim was a discretionary matter which made no determination regarding the merits of the state law claim one way or another. Thus, for purposes of § 1915(g) and the federal lawsuits it was designed to curtail, the dismissal of a pendant state law claim without prejudice is a non-event and should not factor into the "strike" analysis.

2. Courts have held that *Heck* dismissals are "strikes" for purposes of § 1915(g), even though, theoretically, they are dismissals without prejudice. *See e.g., Rivera v. Allin,* 144 F.3d 719, 731 (11th Cir.1998); *Grant v. Sotelo,* 1998 WL 740826 (N.D.Tex.1998).

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

1. Luedtke's objections to the Magistrate's Recommendation are rejected;

2. Luedtke's claims in this suit shall be dismissed without prejudice;

3. The Clerk's Office shall document that Luedtke has had at least three prior civil rights lawsuits dismissed as frivolous, malicious, or for failing to state a claim upon which relief may be granted;

**SO ORDERED.**